IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, EMMA SHULEVITZ, and STEPHANIE SMITH, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| THE GEORGETOWN UNIVERSITY, THE GEORGETOWN SYNAGOGUE – KESHER ISRAEL CONGREGATION, THE NATIONAL CAPITAL MIKVAH, INC., and HISTADRUTH HORABONIM DEAMERICA – RABBINICAL COUNCIL OF AMERICA, INC. ) ) ) ) ) ) ) ) | Case No. _____<br><br>Superior Court Case No. 2014 CA 007644 B |
| Defendants. ) ) ) | |

## NOTICE OF REMOVAL

Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711, Defendants the Georgetown Synagogue – Kesher Israel Congregation ("Kesher") and the National Capital Mikvah (the "NCM") (collectively "Defendants") hereby remove to the United States District Court for the District of Columbia the above-captioned state-court action, originally filed as Case No. 2014 CA 007644 B in the Superior Court for the District of Columbia, Civil Division.

## Removal Is Timely

1.      Plaintiff Jane Doe ("Plaintiff Doe") filed a putative Class Action Complaint against Georgetown University,[1] Kesher, and the NCM on December 2, 2014.  *See* Declaration of Maura M. Logan ("Logan Declaration" or "Logan Decl."), Ex. A.  Plaintiff Doe filed an Amended Complaint ("Amended Complaint" or "Am. Compl.") on December 18, 2014, adding

---

[1]   Plaintiff only seeks to recover from Georgetown University on an individual basis.  Am. Compl. n.2.

two additional named Plaintiffs: Emma Shulevitz ("Plaintiff Shulevitz") and Stephanie Smith ("Plaintiff Smith") (collectively "Plaintiffs"), and an additional Defendant, Histadruth Horabonim Deamerica – Rabbinical Council of America, Inc. (the "Rabbinical Council of America" or the "RCA").  Logan Decl., Ex. B.  Plaintiffs served the Amended Complaint and Summons on the NCM on December 19, 2014, Declaration of Edward C. Bacon ("Bacon Declaration" or "Bacon Decl.") ¶ 2; and on Kesher on December 22, 2014, Logan Decl. ¶ 4.[2] Pursuant to 28 U.S.C. § 1446(a), true and correct copies of any and all process, pleadings and orders served upon Kesher and the NCM are attached, respectively, as Exhibits A-C to the Logan Declaration and Exhibit 1 to the Bacon Declaration, along with the additional "Documents from Superior Court" filed concurrently herewith.[3]  Logan Decl. ¶ 6; Bacon Decl. ¶ 2.  This notice of removal is timely pursuant to 28 U.S.C. § 1446(b) as it is filed within thirty (30) days of service of the Amended Complaint and Summons on Defendants.

### Grounds for Removal

2.       Defendants have removed the above-captioned action to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711 ("CAFA"), as the grounds for removal set out in Section 1332(d)(2) are fully satisfied: Plaintiffs have filed a putative class action complaint on behalf of more than 100 proposed class members, at least one Defendant is a citizen of a state different from at least one Plaintiff, and the aggregate amount in controversy exceeds five million dollars.  *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. ___, 2014 WL 7010692 (U.S. Dec. 15, 2014) (slip op., at 4) (explaining that a notice of removal need only provide a "short and plain statement of the grounds for removal," and need not include evidence supporting federal jurisdiction).

---

[2]   The original Complaint was not served on Defendants until after it was superseded by the Amended Complaint. *See* Logan Decl. ¶ 4; Bacon Decl. ¶ 2.

[3]   The sealed affidavit disclosing Plaintiff Jane Doe's true identity is not being filed.

**A.      Plaintiffs Bring This Case As a Putative Class Action Against Defendants**

3.      Plaintiffs assert that their claims arise from "an unfathomable breach of trust" by Rabbi Dr. Bernard Freundel, "a prominent religious leader and scholar."  Am. Compl. ¶ 1. Freundel was the rabbi at Kesher from 1987 until October 14, 2014.  Am. Compl. ¶¶ 23, 28; Logan Decl. ¶ 7.   He also served as the supervising rabbi at the NCM.[4]  Am. Compl. ¶ 24. Specifically, Plaintiffs seek to hold Defendants Kesher and the NCM vicariously and/or directly liable (on an individual and class-wide basis) for Freundel's alleged use of hidden cameras in the NCM to surreptitiously "captur[e] … naked images" of "his students, [Kesher] congregants, and other women."  *See* Am. Compl. ¶ 1.  These actions formed the basis for Freundel's October 14, 2014 arrest on charges of criminal voyeurism after "a woman in charge of maintaining the NCM/Kesher Israel Mikvah's changing room … noticed Freundel place a 'Dream Machine' clock-radio in the Changing Room [of National Capital Mikvah] adjacent to the shower," and later removed and examined the same clock.  *See* Am. Compl. ¶¶ 1, 86-88.  Plaintiffs maintain that their suit "should proceed as a class action as to Kesher Israel, NCM, and the RCA under D.C. Super. R. Civ. P. 23(b)(1)."  Am. Compl. ¶ 125.  The suit is therefore a "class action" subject to removal if the other requirements of 28 U.S.C. § 1332(d) are met.  *See* 28 U.S.C. § 1332(d)(B) (defining "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure….").

4.      Defendants deny any liability in this case and will present compelling defenses to rebut Plaintiffs' claims on the merits.  Defendants also intend to oppose class certification, but for purposes of the jurisdictional requirements for CAFA removal *only*, Defendants note that, as set forth in more detail below, the allegations in the Amended Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million.  *See* 28 U.S.C. § 1332(d)(6).

---

[4]   "A 'mikvah' is a pool of water in which members of the Jewish faith completely immerse themselves. . . to cleanse the soul and purify the participant."  Am. Compl. ¶ 37.

**B.      There Are More Than 100 Members of the Putative Class**

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) if, in addition to the other requirements of Section 1332(d), the action involves a putative class of at least 100 persons.  Plaintiffs expressly state that "[t]he members of the Class are likely to exceed 100 or more individuals," and that, "[a]ccording to media reports, police detectives believe there could be upwards of 200 victims and some of them could be as far away as Israel."  Am. Compl. ¶ 121.

6.      Plaintiffs' proposed class consists of "all women who participated in an immersion ritual at the NCM/Kesher Israel Mikvah (the 'immersion'): (i) while Freundel was an actual and/or apparent agent, servant, and/or employee of Kesher Israel, NCM, and/or the RCA, (ii) where Freundel initiated, arranged, participated in or was otherwise involved in the immersion, and (iii) who, through cameras, surveillance equipment, recording devices, or other surreptitious means positioned or contrived by Freundel individually or at his request or direction, were involuntarily or secretly photographed or recorded by any means or otherwise subjected to invasions of their privacy in connection with the immersion."  Am. Compl. ¶ 119. Although Defendants deny that class treatment is appropriate, they agree that, should Plaintiffs' proposed class be certified, it will consist of at least 100 members.

7.      Plaintiffs' allegation that the putative class is comprised of more than 100 (and upwards of 200) members seems to be based on publicly available police and media reports and statements of the Office of the United States Attorney for the District of Columbia ("the U.S. Attorney"), which is prosecuting the criminal case against Freundel.  The information made public by MPD and the U.S. Attorney, in addition to media reports, indicates that the putative class exceeds 100 members.  *See* Logan Decl., Ex. D, at p. 2 (sworn statement by Metropolitan Police Department ("MPD") Detective that the recording device retrieved from the Mikvah changing room and turned over to MPD "contain[ed] more than 100 deleted files dating back to 02/03/14"); Am. Compl. ¶ 106 ("MPD's investigation has revealed that the 'Dream Machine' clock-radio that ultimately led to Freundel's downfall was observed in the NCM/Kesher Israel

4

Mikvah Changing Room at least two years before any action was taken to investigate the out-of-place item, but certain media reports indicate the clock-radio may have been present in the NCM/Kesher Israel Mikvah's Changing Room as far back as 2010"); Logan Decl., Ex. E ("Even in its initial review, the government is of the opinion and belief that the defendant has been engaging in acts of Voyeurism similar to those six charged with the use of several devices over a significant period of time.").

**C.      There Is More Than Minimal Diversity Among the Parties**

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) if, among the other requirements of Section 1332(d), minimal diversity exists, *i.e.*, if any member of the class is a citizen of a state different from any defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

9.      Plaintiff Shulevitz states that she "is a natural person who resides in Rockville, Maryland."  Am. Compl. ¶ 13.  She is therefore a citizen of Maryland.  *See Anderson v. Watts*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…."); 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 & n. 28 (3d ed. 2013) ("It is assumed…that a person's current residence is also his domicile….").

10.      Plaintiff Smith is likewise a citizen of Maryland; she states that she "is a natural person who resides in Towson, Maryland."  Am. Compl. ¶ 14.

11.      Plaintiff Doe is a citizen of the District of Columbia; she states that she "is a natural person who resides in the District of Columbia."  Am. Compl. ¶ 12.

12.      A corporation is a citizen of its state of incorporation and the state of its principal place of business.  28 U.S.C. § 1332(c)(1).  Defendants Kesher and National Capital Mikvah are both incorporated in the District of Columbia, with their principal places of business there.  Am. Compl. ¶¶ 16-17.  Both Kesher and the NCM are therefore citizens of the District of Columbia.

13.     Defendant RCA is a corporation organized and existing under the laws of the state of New York with its principal place of business in New York.  Am. Compl. ¶ 18.  As such, the RCA is a citizen of New York.  *See* 28 U.S.C. § 1332(c)(1).

14.     Because Plaintiffs Shulevitz (Maryland) and Smith (Maryland) are citizens of different states than Defendants Kesher Israel and National Capital Mikvah (District of Columbia), and Plaintiff Doe (District of Columbia) is a citizen of a different state than Defendant RCA (New York), the low threshold for minimal diversity has been met and exceeded.  *See* 28 U.S.C. § 1332(d)(2)(A).  Indeed, just as two of the three named Plaintiffs are from outside the District of Columbia, the putative class is likely to include a substantial, if not predominant, share of non-D.C. citizens.

**D.     The Amount in Controversy Exceeds $5 Million**

15.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) if, among the other requirements of Section 1332(d), the amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).

16.     Though Plaintiffs' Amended Complaint does not include a prayer for a specific amount of damages, and Defendants deny any liability or responsibility for the actions alleged in the complaint, the types of damages claimed and the estimated size of the class make clear that the aggregate amount in controversy exceeds $5 million.  *See Dart Cherokee Basin Operating Co.,* slip op., at 7 (holding that under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").  Plaintiffs allege that they and the putative class "have suffered, and will continue to suffer, permanent economic and non-economic damages including (without limitation): great indignity, humiliation, shame, embarrassment, mortification, and other injuries to their physical, mental, emotional, and nervous systems; severe emotional anguish, mental anguish, and psychological distress; the past, present and future cost of medical care including (without limitation) therapy and psychological counseling; lost earnings and diminished capacity; and other pecuniary losses to be established at trial."  Am. Compl. ¶¶ 140, 152, 165, 178, 191, 205.  Defendants deny that

they are liable for any economic or non-economic damages to Plaintiffs or putative class members; however, for purposes of this jurisdictional analysis *only*, Defendants rely on Plaintiffs' allegations.  With "upwards of 200" class members, *see* Am. Compl. ¶ 121, the amount in controversy may easily exceed $5 million in the aggregate.  Indeed, to reach the $5 million mark, the average damages recovery need only be $25,000, which is foreseeable in a case of this sort.  There have been recoveries of at least that amount in certain voyeurism cases.[5]

17.     In addition to "compensatory damages," Plaintiffs seek "reasonable attorneys' fees."  Am. Compl., Prayer For Relief, ¶ d.  Plaintiffs apparently base their attorneys' fees demand on their claim for violation of the District of Columbia wiretapping statute, D.C. Code § 23-554, which provides for recovery of reasonable attorneys' fees.  D.C. Code § 23-554(a)(2)(C).  Although Defendants have shown that the putative amount in controversy not including attorneys' fees surpasses the jurisdictional threshold, this Court should nevertheless include the potential attorneys' fees in evaluating the amount in controversy.  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).  Defendants deny that any such attorneys' fees are owed to Plaintiffs or putative class members; however, for purposes of this jurisdictional analysis *only*, Defendants rely on Plaintiffs' allegations that the attorneys' fees are owed.  *Guglielmino*, 506 F.3d at 700; *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000

---

[5] *See, e.g., Bradbury v. Kenrick*, Case No. 23 C 02 000089 (Worcester Co., MD, Jan. 26, 2005) (jury verdict awarding plaintiff $101,275.00 in compensatory damages and $200,000 in punitive damages against defendant who surreptitiously videotaped plaintiff showering in his condominium), *available at* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=23C02000089&loc=49&detailLoc=CC, *and summarized at* http://www.hollandlawfirm.com/pdf/media_VERDICTS.PDF; *Walsh v. McVettie*, Case No. 01-018487-NZ (Livingston Co., MI, Feb. 7, 2003) (jury verdict awarding plaintiff $575,000 against defendant who secretly videotaped plaintiff in a changing room), *summarized at* http://www.schwartzlawfirmpc.com/Media/Jury-awards-aspiring-model-575-000-in-McVittie-case-Daily-Press-Argus-2-9-03.shtml; *Does v. Franco Productions*, Case No. 1:99-cv-07885 (N.D. Ill. Nov. 25, 2002) (judgment for plaintiffs who were secretly videotaped in locker rooms and showers against defendants who made and distributed the recordings "in the amount of $506,045,795.82 as follows: (a) $1,000,000.00 for each of the plaintiffs John Does 1 through 46, inclusive, or a total of $46,000,000.00 for compensatory damages $10,000,000.00 for each said plaintiff in punitive damages; and $45,795.82 in costs and attorney fees"), ECF No. 80, *aff'd sub nom. Does v. GTE Corp.*, 347 F.3d 665 (7th Cir. 2003); *Kidd v. District of Columbia, et al.*, Case No. 89-02695, 1990 DC Metro Verdicts Monthly LEXIS 526 (D.C. Sup. Ct. Oct. 12, 1990) (jury verdict awarding plaintiff $258,000 in compensatory damages, including $5,000 in lost income, for sexual harassment in violation of 42 U.S.C. § 1983 and intentional infliction of emotional distress).

(9th Cir. 2007), *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 568 U.S. ___ (2013).

## This Court Has Jurisdiction and Removal Is Proper

18.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

      a.  This is a putative class action within the meaning of § 1332(d)(1)(B);

      b.  The action involves a putative class of more than 100 women;

      c.  Plaintiffs Shulevitz and Smith are citizens of states different from Defendants Kesher Israel and National Capital Mikvah, while Plaintiff Doe is a citizen of a state different from Defendant RCA; and

      d.  The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by Section 1332(d)(2).

Accordingly, this action is properly removable under 28 U.S.C. § 1441.

19.     The United States District Court for the District of Columbia is the federal judicial district in which the District of Columbia Superior Court sits.  This action was originally filed in District of Columbia Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

20.     True and correct copies of all process, pleadings and orders served upon Defendants are attached as Exhibits A through C to the Logan Declaration and Exhibit 1 to the Bacon Declaration, along with the additional "Documents from Superior Court" filed concurrently herewith.  This constitutes the complete record of all records and proceedings in the state court.

21.     Upon filing the Notice of Removal, Defendants will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the District of Columbia Superior Court, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants hereby respectfully remove this action from the District of Columbia Superior Court to this United States District Court.

Respectfully submitted,

Dated: January 8, 2015
/s/Paul Blankenstein
Paul Blankenstein, D.C. Bar No. 304931
/s/Maura M. Logan
Maura M. Logan, D.C. Bar No. 1010924
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  202.955.8500
Facsimile:  202.467.0539
pblankenstein@gibsondunn.com
mlogan@gibsondunn.com

Attorneys for Defendant THE GEORGETOWN
SYNAGOGUE – KESHER ISRAEL
CONGREGATION

Dated: January 8, 2015
/s/Edward C. Bacon
Edward C. Bacon, D.C. Bar No. 270124
/s/Patricia M. Thornton
Patricia M. Thornton, D.C. Bar No. 354951
BACON, THORNTON & PALMER, LLP
Capital Office Park
6411 Ivy Lane, Suite 500
Greenbelt, MD  20770-1411
Telephone:  301.345.7001
ebacon@lawbtp.com
pthornton@lawbtp.com
Attorneys for Defendant THE NATIONAL
CAPITAL MIKVAH, INC.

101856046.1