IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE, et al.                    )
                                    )
            Plaintiffs,             )        Case Number 1:15-cv-00026 (CRC)
v.                                  )
                                    )
GEORGETOWN UNIVERSITY, et al.       )
                                    )
            Defendants.             )

**DEFENDANT GEORGETOWN UNIVERSITY'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS**
**MOTION TO DISMISS AMENDED CLASS ACTION & INDIVIDUAL COMPLAINT**

Defendant Georgetown University ("the University") respectfully moves for an Order dismissing all six claims asserted against it by plaintiff Jane Doe ("Doe") in the Amended Class Action & Individual Complaint ("Amended Complaint").  Doe's case against the University must be dismissed pursuant to Fed. R. Civ. P 12(b)(1) because she has failed to allege actual injury and thus lacks standing to proceed and because none of her claims satisfy the requirements of Fed. R. Civ. P. 12 (b)(6).

The University wishes in no way to minimize the egregious misconduct that is alleged in the Amended Complaint.  However, virtually none of those allegations involve the University and the few conclusory allegations that pertain to the University do not state a case that can survive this motion.

## INTRODUCTION

This lawsuit grows out of allegations that surfaced less than three months ago that Rabbi Bernard Freundel of the Georgetown Synagogue-Kesher Israel Congregation ("Kesher Israel") surreptitiously photographed, videotaped and/or audiorecorded women as they engaged in Jewish ritual bathing at the National Capital Mikvah, Inc. ("NCM") near the synagogue.  Those

allegations have been well-publicized, and as the Court is no doubt aware from media reports (as well as from the Amended Complaint itself), the Metropolitan Police Department and the United States Attorney are investigating the allegations but no grand jury indictment has yet been returned accusing Freundel of engaging in any specific criminal acts against any specific victims. Plaintiffs, rather than awaiting the conclusion of the investigation and the subsequent disposition of any criminal charges against Freundel -- and notwithstanding the fact that they apparently do not know whether they were among the women whose privacy Freundel allegedly violated -- have rushed to court to file this lawsuit.[1]  The three plaintiffs assert six class-action claims against Kesher Israel, NCM, and Histadruth Horabonim Deamerica—Rabbanical Council of America, Inc. ("RCA").  Doe is the only plaintiff who asserts claims against the University, and she does so only in her individual capacity.[2]  Strangely, Freundel is not a defendant in this lawsuit.

---

[1]    Doe and her co-plaintiffs currently are attempting to determine whether they in fact were victims of Freundel.  The University asks the Court to take judicial notice (which the Court can do without converting this motion into a motion for summary judgment) of the fact that plaintiffs recently served Superior Court subpoenas on the Metropolitan Police Department and the United States Attorney for the District of Columbia seeking investigative files, grand jury testimony and other information relating to the criminal investigation of Freundel.  Plaintiffs' subpoenas seek to learn the identities of Freundel's alleged victims.  At the same time, on December 18, 2014, another purported class action was filed in Superior Court (Case No. 14-008073) by a different law firm for a plaintiff proceeding as Jane Doe 2 against Kesher Israel, NCM and RCA on behalf of "thousands of women who have used the mikvah since 2005."  Presumably these "thousands of women" include other prospective plaintiffs who, unlike Doe and her co-plaintiffs, are awaiting the release of information about the identities of victims before they decide if they have a basis to file suit.

[2]    To the extent that any of Doe's claims against the University survives this motion and the Court subsequently rules that this case may proceed as a class action against Kesher Israel, NCM and/or RCA, the University anticipates filing a motion to sever.  The motion would be based on the manifest prejudice the University would face if it were forced to proceed as an individual defendant in litigation involving a class of perhaps thousands of women who had nothing to do with the University but whose claims against other defendants would draw the University into a protracted and expensive legal battle and would create the risk that any actions for which those other defendants were held liable would be imputed unfairly to the University.

## BACKGROUND

On December 2, 2014, Doe filed suit against Kesher Israel, NCM and Georgetown University in the Superior Court of the District of Columbia. On December 18, 2014, Doe filed an Amended Complaint in Superior Court which added two new plaintiffs, Emma Shulevitz and Stephanie Smith, and one new defendant, RCA. On January 8, 2015, Kesher Israel and NCM filed a Notice of Removal from Superior Court to this Court. All three plaintiffs assert class action claims against Kesher Israel, NCM and RCA. Doe alone also asserts claims against Georgetown University in her individual capacity. Amended Complaint ¶¶ 9-11.[3]

Doe identifies herself as a Georgetown University Law Center student and a devoted member of the Jewish faith. *Id.* ¶ 2. She alleges that in early 2014 she was enrolled in a Jewish Studies course co-taught by Freundel, an adjunct professor at the Law Center. *Id.* ¶¶ 3, 27. She alleges that in response to her request that Freundel recommend a topic for her research paper, he suggested that she write about the mikvah ritual and invited her to come to NCM and participate in the ritual herself. *Id.* ¶¶ 47-48. Doe further alleges that the "main campus" of the University "is in the same community" as Kesher Israel, and that female members of some undefined "Georgetown community" described Freundel as "creepy," although Doe does not identify anyone who said this or to whom it was said. *Id.* ¶¶ 111-113. Doe alleges "upon information and belief" that Freundel had a reputation in that "community" for abusing his young female students and conversion candidates and engaging in other inappropriate behavior, *id.* ¶ 115, and

---

[3]    Neither Shulevitz nor Smith makes any allegations against the University or asserts that she has had anything to do with the University. Shulevitz describes herself as someone who "sought Freundel's counseling, supervision, and sponsorship for her conversion to Judaism" and alleges that Freundel invited her to participate in the mikvah ritual at NCM "as an agent of RCA and Kesher Israel." Amended Complaint ¶¶ 4-6. Smith describes herself as a senior at Towson University who took a course taught by Freundel at Towson and alleges that Freundel "used his positions as a religious leader at NCM, Kesher Israel and RCA" to lure her into participating in the mikvah ritual at NCM. *Id.* ¶¶ 7-8.

makes conclusory allegations to the effect that the University did not investigate Freundel's background prior to hiring him as an adjunct professor and made no effort to warn its students about "widespread public concerns surrounding Freundel[.]"  *Id.* ¶ 116.  This is the sum and substance of Doe's allegations concerning the University; apart from conclusory statements, there are no other allegations about the University that even purport to be factual.

Doe's remaining allegations concern NCM, which owned the mikvah and employed Freundel as its "Supervising Rabbi," and Kesher Israel, where Freundel served as Rabbi for many years.  Doe alleges that she visited the NCM mikvah on March 2, 2014 and April 3, 2014. *Id.* ¶¶ 52-53.  She alleges (no doubt on the basis of media reports) that on or about September 28, 2014, an employee of the NCM mikvah observed Supervising Rabbi Freundel place a clock-radio in the changing room adjacent to the shower.  *Id.* ¶ 86.  She alleges that on or about October 12, 2014, the same employee examined the clock-radio and discovered that it contained hidden electronic recording devices;[4] that on or about October 14, 2014, Freundel was arrested and charged with several misdemeanor counts of voyeurism; that police searches of Freundel's offices and residence recovered computers, hidden cameras and photographs of naked women; and that the investigation is ongoing.  *Id.* ¶¶ 86-91.

Doe and her co-plaintiffs assert six causes of action against all four defendants, including Negligent Hiring, Training, Retention and Supervision (Count I), Negligent Entrustment (Count II), Vicarious Liability- Respondeat Superior Negligent & Negligence Per Se (Count III), Direct

---

[4]        Doe alleges "upon information and belief" that Freundel placed the clock-radio containing an electronic recording device in the changing room of the mikvah "for the purpose of surreptitiously observing, electronically recording, and intentionally capturing video, audio, and still images of the Plaintiffs' and the Class Members' private areas…" and that Freundel "willfully and intentionally intercepted, or in the alternative, willfully endeavored to intercept, through the means of an electronic recording device, Plaintiffs' and the Class Members' oral communications while they were using the Changing Room and the mikvah."  *Id.* ¶ 92.

Negligence (Count IV), Vicarious Liability- Respondeat Superior Invasion of Privacy – Intrusion Upon Seclusion (Count V), Vicarious Liability- Respondeat Superior -- Violation of D.C. Code Ann. ¶23-542(a) –Wiretapping (Count VI).  As discussed below, all six claims must be dismissed.

## ARGUMENT

### I.    Doe lacks standing to pursue her claims against Georgetown University

"The defect of standing is a defect in subject matter jurisdiction."  *Silvious v. Coca-Cola Co.,* 893 F. Supp. 2d 233, 235-36 (D.D.C. 2011) (noting that a motion to dismiss for lack of standing is properly brought under Fed. R. Civ. P. 12(b)(1)); *see also Warth v. Seldin* 442 U.S. 490, 517-18 (1975) ("The rules of standing … are threshold determinants of the propriety of judicial intervention.").  Thus, "standing is to be determined as of the *commencement* of suit and may not be established by a development that occurs after the commencement of the litigation. *Conservation Law Found. v. Pritzker*, No. 13-cv-000820, 2014 WL 1338284, at* 5 (D.D.C. Apr. 4, 2014) (internal citations and quotation marks omitted) (emphasis in original).  The plaintiff bears the burden of establishing standing.  *Long Term Care Pharmacy Alliance v. Leavitt,* 530 F. Supp. 2d 173, 180 (D.D.C. 2008).

On the basis of the allegations in the Amended Complaint, Doe cannot meet that burden here.  To establish standing, (1) plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the alleged action of the defendant; and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision.  *Silvious*, 893 F. Supp. 2d at 236.  An injury in fact is "an invasion of a legally protected interest that is (a) concrete and particularized; and (b)

actual or imminent, not conjectural or hypothetical." *Id.*  Accordingly, plaintiff "must allege

facts 'demonstrating that [it] is a proper party to invoke judicial resolution of the dispute.'"

*Atlantic Urological Assocs., P.A. v. Leavitt*, 549 F. Supp. 2d 20, 26 (D.D.C. 2008) (quoting

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).   "The facts alleged 'must be enough

to raise a right to relief above the speculative level.'"  *Leavitt*, 549 F. Supp. 2d at 26 (citation

omitted).  "The injury in fact test requires more than an injury to a cognizable interest.  It

requires that the party seeking review be himself among the injured."  *Arias v. Dyncorp.*, 738 F.

Supp. 2d 46, 49 (D.D.C. 2010) (internal quotation marks and citation omitted).

Doe alleges without qualification that she visited the NCM mikvah on March 2, 2014 and

April 3, 2014.  *Id.* ¶¶ 52-53.  She also alleges without qualification that during those visits, she

participated in the mikvah ritual, undressing in the changing room and immersing herself in the

bath.  However, the remainder of her allegations are *not* without qualification but are based

instead "upon information and belief."  *See id.* ¶¶ 92-95, 112-117.  Doe states that she *believes*

Freundel placed the clock-radio in the changing room when she visited the NCM mikvah and

that she *believes* he captured images of her or recorded her while she was naked.  *Id.* ¶¶ 92-93.

But nowhere in the Amended Complaint does Doe state without qualification that she was

photographed, videotaped and/or audiorecorded by Freundel or other plead facts to support a

specific inference that she was so photographed, videotaped and/or audiorecorded.  Of course, all

of Doe's claims against the University are premised on the *fact* that Freundel actually

photographed, videotaped and/or audiorecorded *her*.  If Freundel did not do so. then Doe's

claims against the University cannot survive this motion.

As disturbing as the conduct attributed to Freundel in the Amended Complaint is, at this

point, Doe's alleged injury is nothing more than hypothetical.  ("As we have said many times,

conjectural or hypothetical injuries do not suffice for Article III standing." *Clinton v. City of New York*, 524 U.S. 417, 459 (1998); *see also Occidental Permian Ltd. v. F.E.R.C.*, 673 F.3d 1024, 1026 (D.C. Cir. 2012) (dismissing case because alleged injuries were conjectural or hypothetical; noting that "[t]he irreducible constitutional minimum of standing requires a petitioner to show a concrete injury that has either transpired or is imminent. . . A conjectural or hypothetical injury will not do.") (internal quotation marks and citations omitted); *Hardy v. Hamburg*, No. 11-cv-1739, 2014 WL 5420037, at * 13 (D.D.C. Sept. 23, 2014) ("If an alleged injury is hypothetical or conjectural, the 'injury-in-fact' requirement is not satisfied.") (citation omitted).  Doe has failed to allege adequately an injury in fact.

Although *Stein v. Bank of America Corp.,* 887 F. Supp. 2d 126 (D.D.C. 2012) is not squarely on point, it is instructive.  There, customers brought a class action against Bank of America seeking relief for alleged violations of the Right to Financial Privacy Act (RFPA).  The plaintiffs alleged that Bank of America had established call/data centers that had access to customers' records, which the plaintiffs claimed was in contravention of the RFPA.  But none of the individual plaintiffs alleged that *his or her* records had actually been wrongfully accessed.  The bank moved to dismiss because the "injury in fact" test requires that the party filing suit be among the injured.  The Court agreed and dismissed the action because plaintiffs had failed to properly allege an injury under the RFPA and thus to demonstrate their standing to bring suit.  The Court noted that the plaintiffs' allegations were "literally rooted in belief and suspicion," as those words appeared frequently in the complaint.  However "belief and suspicion are quite far from the 'concrete and particularized,' and 'actual and imminent, not conjectural or hypothetical requirements of standing[.]"  *Stein,* 887 F. Supp. 2d at 133.

The requirement that a plaintiff allege injury in fact was recently at issue in *In re Science Applications Intl. Corp (SAIC) Backup Tape Data Theft Litigation,* No. 12-347, 2014 WL 1858458, at *9 (D.D.C. May 9, 2014).  In that case, in which only six of the 36 plaintiffs alleged that their information had been accessed and misused, the District Court concluded that the remaining 30 plaintiffs lacked standing and rejected the argument that those plaintiffs' claims were viable because six plaintiffs had alleged injury in fact.  The Court said that where "the majority of plaintiffs contend neither that their personal information has been viewed nor that their information has been exposed in a way that would facilitate easy, imminent access" such plaintiffs lacked standing to pursue their claims because "for a person's privacy to be invaded, their personal information must, at a minimum, be disclosed to a third party."  *SAIC* is like our case, in which Doe's allegations are premised upon Freundel's invasion of her privacy but fall short of alleging with the requisite certainty that her privacy was actually invaded. [5]

In our case, in which all of Doe's claims against the University stem from Freundel's alleged misconduct while she was in the ritual bath, Doe never alleges without qualification that she was actually photographed, videotaped and/or audiorecorded herself.  She does not state that she has seen a photograph or videotape or heard an audiorecording of herself in the bath.  Nor does she allege that either the police or anyone else has informed her that she was a victim of Freundel.  Like the plaintiffs' allegations in *Stein,* Doe's allegations are all made "upon information and belief."  Amended Complaint ¶¶ 92-95.  *See also Walker v. S.W.I.F.T SCRL,*

---

[5]    *See also Robinson v. Vaughn,* No. 91-cv-7646, 1992 WL 368461 (E.D. Pa. Dec. 2, 1992) (finding that fear of contracting illness related to exposure to asbestos too speculative to give rise to cause of action and therefore plaintiff lacked standing); *Bd. of Commissioners v. Nuclear Assurance Corp.,* 588 F. Supp. 856, 859-60 (N.D. Ohio 1984) (finding that plaintiffs' alleged anxiety about defendant's transport of spent nuclear fuel on local roads and the cost of training safety personnel to respond in the event of an accident involving radioactive materials was not a real and immediate actual injury and thus plaintiffs lacked standing to pursue declaratory judgment).

517 F. Supp. 2d 801, 808 (E.D. Va. 2007) ("Plaintiffs rely on their own belief that their financial

information has been disclosed, but such a belief, without more, cannot support standing."); *In re*

*Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, No. 2:08-MD-1954, 2009 WL 1325056,

at *12 (D. Me. May 12, 2009) (where third-party stole electronic data from a merchant, the Court

concluded that customers who did not actually have a fraudulent charge posted to their account

and only had "the emotional distress that their accounts might be in peril" could not proceed

against merchant for negligence).

     While the University sympathizes with Doe and understands her concern that she *may*

have been victimized, as a legal matter Doe simply has not made an allegation of injury

sufficient to give her standing to proceed against the University in this case.  All of her claims

must be dismissed under Fed. R. Civ. P 12(b)(1).

## II.    All of Doe's claims must be dismissed under Fed. R. Civ. P. 12(b)(6)

     Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be

dismissed if it fails to state a claim upon which relief may be granted.  *Williams v. Conner*, 522

F. Supp. 2d 92, 97 (D.D.C. 2007)  "Although detailed factual allegations are not necessary to

withstand a Rule 12(b) motion to dismiss, to provide the grounds of entitlement to relief, a

plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements

of a cause of action.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007))

(internal quotation marks and citation omitted).  Accordingly, "the facts alleged in the complaint

must be enough to raise a right to relief above the speculative level or must be sufficient to state

a claim for relief that is plausible on its face."  *Id.* (internal quotation marks and citations

omitted).  On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all of the

factual allegations in the complaint.  *Id.*  But "[w]hile the complaint is to be construed liberally

in plaintiff's favor, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions." *Id.* at 97-98 (citations omitted).

In this case, Doe has failed to allege actual facts specifically related to the University that are necessary to satisfy this standard. When a complaint fails to raise a claim of entitlement to relief, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations and quotations omitted). This case is at that point.

## A.    All of Doe's claims must be dismissed for failure to allege injury

Doe's failure to allege without qualification that she was a victim of Freundel's alleged misconduct not only deprives her of standing to pursue her claims against the University; it also requires the substantive dismissal of all of her claims as a matter of the law of negligence.[6] That is because injury in fact is an essential element of any negligence claim in the District of Columbia. *Powell v. District of Columbia,* 602 A.2d 1123, 1133 (D.C. 1992) (noting that one of the essential elements of negligence is injury to the plaintiff). *See also District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984) (noting that "[t]he elements of a cause of action for negligence are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.

---

[6]     Defendants Kesher Israel and NCM have removed this action from D.C. Superior Court to the United States District Court for the District of Columbia pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711 ("CAFA"). "Subject to certain limitations, the CAFA confers federal diversity jurisdiction over class actions[.]" *Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132, 136 (D.D.C. 2010). Federal courts sitting in diversity apply federal procedural law and state substantive law. *Burke v. Air Serv. Int'l, Inc.*, 775 F. Supp. 2d 13, 19 (D.D.C. 2011). Because all of Doe's claims against the University are state law tort claims, the substantive law of the District of Columbia controls. *Novak v. Capital Mgmt. and Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir 2006) ("Thus, in a diversity case, the substantive tort law of the District of Columbia controls.")

Implicit in this formulation is the requirement that the interest damaged be one which the law protects against unintentional injury.") (citations omitted).  Doe has not sufficiently alleged injury in fact.

**B.      Count I (negligent hiring, retention and supervision) must be dismissed**

To properly plead a claim of negligent hiring, retention and supervision in the District of Columbia, a plaintiff must allege facts indicating (1) that the employer knew or should have known that its employee behaved in a dangerous or otherwise incompetent manner; and (2) that the employer, armed with actual or constructive knowledge, failed to adequately supervise the employee.  *Giles v. Shell Oil Corp.,* 487 A.2d 610, 613 (D.C. 1985); *see also Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005).   Doe has alleged no such facts.  Instead, virtually all of her allegations against the University are mere boilerplate recitations of legal standards coupled with conclusory allegations that the University supposedly did or failed to do things necessary to meet those standards.

Doe alleges in the most general terms that defendants "owed a continuing duty to: reasonably, carefully, and conscientiously secure the services of qualified and well-trained agents, servants and/or employees; to properly investigate, credential, qualify, select, monitor, and supervise their agents, servants, and/or employees; to promulgate and enforce proper and effective standards, procedures, protocols, systems and rules to ensure quality care, safety, and privacy of Plaintiffs and members of the Class; and to otherwise assure and maintain the safety and privacy of Plaintiffs and members of the Class." Amended Complaint ¶137.  Doe further alleges that "[d]efendants negligently breached the above-mentioned duties by hiring, retaining, failing to properly train, and failing to properly supervise Freundel, despite his reputation for improper, unlawful, inappropriate, lewd, and unprofessional conduct."  *Id.* ¶138.  And she

alleges that "[d]efendants knew or should have known that Freundel engaged in improper, unlawful, inappropriate, lewd, and unprofessional conduct, including, but not limited to, photographing and/or videotaping Plaintiffs and other Class Members while naked and without consent or authorization, and distributing and/or publishing those images and/or videos without consent or authorization."  *Id.* ¶139.  But the same could be said of any defendant accused of negligent hiring, and no facts specific to the University have been alleged.  Such broad and conclusory allegations cannot serve as the basis for a claim of negligent hiring, retention and supervision.

Doe's allegations that Freundel had a "reputation" and that the University was aware of that reputation illustrate the point.  Doe observes that "Kesher Israel is located in *the same community* as Georgetown's main campus, where members of Washington's elite reside and socialize [,]" and says that "*[u]pon information and belief*, members of the Georgetown University faculty" (none of whom Doe identifies) "were congregants at Kesher Israel and were active in the congregation throughout Freundel's tenure as Kesher Israel's Rabbi."  *Id.* ¶¶ 111-12 (emphasis added).  Those allegations not only say nothing meaningful but are less than candid for at least two reasons.  First, the Court may take judicial notice that the Law Center is near the U.S. Capitol, several miles away from the University's main campus.  Second, the Court may take judicial notice from the addresses listed in the Amended Complaint that Kesher Israel and the NCM mikvah are not adjacent to the University's main campus as Doe suggests but are on the other side of Wisconsin Avenue, almost one mile away.  Thus the "community" Doe attempts to create in order to impute knowledge to the University is a fiction.  Moreover, even assuming that some unidentified individuals allegedly shared gossip about Freundel near the

Kesher Israel and the NCM mikvah, there is no allegation that anyone at the University or the Law Center who hired or supervised Freundel ever heard it.

The Amended Complaint likewise contains no non-conclusory factual allegations about how -- or who at -- the University was negligent in hiring, training or supervising Freundel.  *See Di Feng v. Lim*, 786 F. Supp. 2d 96, 107 (D.D.C. 2011) (plaintiff must allege "facts that show the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee;" finding that conclusory allegations that employer could have and should have more closely supervised employee are insufficient to state a claim for negligent supervision); *Clark v. Computer Sci. Corp.*, 958 F. Supp. 2d 208, 214 (D.D.C. 2013) (dismissing negligent hiring, training, supervision and retention claim because plaintiff failed "to state facts to explain how defendants were purportedly negligent in how they hired, trained, or supervised their employees.")

Doe has failed to allege facts sufficient to state a claim against Georgetown University for negligent hiring, retention, and supervision and the claim must be dismissed.

## C.   Count II (negligent entrustment) must be dismissed

To prove negligent entrustment in the District of Columbia, a plaintiff must show that the defendant made an object or chattel available to a third person whom the defendant knew or should have known was likely to use that object in a manner involving the risk of physical harm to others.  *Phelan v. City of Mount Rainier*, 805 A.2d 930, 941 (D.C. 2002); *Young v. U-Haul Co. of D.C.*, 11 A.3d 247, 249 (D.C. 2011).[7]  Count II fails against the University because Doe

---

[7]      In *Phelan,* Jeffrey Phelan was shot and killed on the steps of his home by off-duty police officer Wesley Thompson.  Phelan's estate sued the City of Mount Rainier for negligent entrustment and common law claims of negligent hiring, supervision, training and retention.  After the estate withdrew the negligent hiring and training claims, the trial court granted summary judgment to

has not alleged that the University specifically made anything tangible available to Freundel.

Nor has Doe alleged any facts suggesting that the University knew or should have known

anything that would have reasonably placed the University on notice of the possibility that

Freundel would misuse anything that was entrusted to him.  And she has not alleged that she

suffered physical harm or was placed at risk of physical harm.

Count II amounts to nothing more than conclusory allegations that the University

breached its duty to Doe "by entrusting Freundel with the facilities, devices, equipment,

machines, and/or supplies that he used to perform the tortious and illegal acts alleged herein, and

Defendants knew or should have known Freundel would use the facilities, devices, equipment,

machines, and/or supplies entrusted to him to harm his (and Defendants') students, congregants,

and/or community members."  Amended Complaint ¶ 151.  Doe does not define "facilities,

devices, equipment, machines, and/or supplies" in the count itself but presumably is referring to

the NCM mikvah and the clock-radio Freundel allegedly placed near it from time to time.  But

Doe does not allege -- nor could she -- that the University provided Freundel with access to the

NCM mikvah or supplied Freundel with a clock-radio or anything else.  There is no allegation

---

the City on the remaining claims.  The estate appealed, claiming that the City was on notice "that Officer Thompson was an accident waiting to happen" because of various behavioral problems reported in his personal file.  *Phelan,* 805 A.2d at 941-42.  Therefore, the estate argued, the City knew or should have known that if it entrusted Officer Thompson with a service revolver, he would use it in a dangerous manner.  *Id.* at 941.  The Court of Appeals disagreed, finding that there was "no evidence that any of his misconduct to that point involved his service revolver and only a single documented instance of his having used inordinate force during a detention.... Even assuming the facts outlined by appellant to be true, they are *insufficient as a matter of law* to show that the City knew or should have known that Thompson was likely to use his weapon in a manner involving risk of physical harm to others."  *Id.* at 942 (emphasis added; citation and internal quotation marks omitted.)  As the Court of Appeals has recognized, "before one can be required to make an inquiry, he or she must possess knowledge of some facts or circumstances to put him or her on notice."  *Young,* 11 A.3d at 250.

that the University provided, supplied or entrusted *anything* to Freundel.  Count II fails to meet

the requirements set forth in *Phelan* and *Young* and must be dismissed.

**D.     Counts III, IV, V, and VI (respondeat superior claims) must be dismissed**

Of the six counts against the University, four -- Counts III, IV, V and VI -- are based on a

theory of respondeat superior.[8]  Respondeat superior allows an employer to be held liable for acts

of employees committed within the scope of their employment.  In our case, the horrendous

behavior of Freundel which Doe describes is not alleged to have been -- and could not have been

-- within the scope of Freundel's employment as an adjunct faculty member at the Law Center.

Conduct is considered within the scope of employment only if: (1) it is of the kind the

employee is employed to perform; (2) it occurs substantially within the authorized time and

space limits; (3) it is actuated, at least in part, by a purpose to serve the master; and (4) if force is

intentionally used by the servant against another, the use of force is not unexpected by the

employer.  By contrast, conduct is *not* within the scope of employment if it is different in kind

from that authorized, far beyond the authorized time or space limits, or too little actuated by a

purpose to serve the employer.  *Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 430

(D.C. 2006) (concluding as a matter of law that defendant's employees who stole from plaintiff's

home were not acting within the scope of their employment and that defendant could not be held

liable under the doctrine of respondeat superior); *see also Boykin v. District of Columbia,* 484

A.2d 560, 561-62 (D.C. 1984).

---

[8]     The Amended Complaint specifically describes Counts III, V and VI as respondeat superior claims.  Although Count IV is not so described, Doe alleges that "at all relevant times, Defendants appointed, engaged, employed, and/or contracted with Freundel to act as their actual and/or apparent, duly authorized agent, servant, and/or employee and permitted Freundel to remain as such for all relevant periods."  Amended Complaint ¶ 171.  Thus it appears Count IV is also a respondeat superior claim.

The conduct alleged here -- Freundel's secret photographing, videotaping and/or audiorecording of Doe in the NCM mikvah (Amended Complaint ¶¶ 159-161) -- cannot be viewed by any reasonable person as falling within the scope of Freundel's employment as an adjunct professor at the Law Center.  The criminal conduct in which Freundel is alleged to have engaged is plainly "different in kind" from teaching law, took place far away from the Law Center campus, and was not "actuated by" any "purpose to serve" the University.  It is telling that Doe herself does not allege in the Amended Complaint that Freundel's behavior came within the scope of his employment as an adjunct law professor or purported in any way to serve the interests of the University, as such allegations simply make no sense.

*Boykin* helps make this point.  In that case, Boyd, a field coordinator of a deaf/blind program at Jackson Elementary School, allegedly sexually assaulted a 12-year old student in the school cafeteria.  Part of Boyd's job was to train blind students to avoid obstacles.  Plaintiff (the student's mother) argued that a deaf, blind and mute child can be taught only through touch, and that physical touching was part of the teacher-student relationship, which made it possible for the sexual assault to occur.  The D.C. Court of Appeals held that this connection was "too attenuated" to hold the District liable.  Similarly in *Doe v. Slipper*, 821 F. Supp. 2d 384 (D.D.C. 2011), a company employee was raped by the company's Chief Operating Officer at a trade show.  The Court dismissed the claim under Rule 12(b)(6), finding that there was no allegation that the COO's duties included touching the plaintiff and no allegation to support the plaintiff's conclusory statement that the COO was motivated by a desire to further the company's interests by raping her.  As in *Boykin* and *Slipper*, plaintiff's allegations are "too attenuated" to hold the University liable for Freundel's actions.

Accordingly, Doe's claims against the University in Counts III, IV, V and VI must be dismissed because she has not properly pled the elements of respondeat superior.

**E.      Count IV (direct negligence) must be dismissed**

To the extent that Count IV is not a respondeat superior claim, it nevertheless must be dismissed.  To establish direct negligence, the plaintiff must show: (1) the applicable standard of care; (2) a deviation from that standard by defendant; and (3) a causal relationship between that deviation and her injury.  *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997).  As a threshold matter, the allegations of Count IV are not meaningfully different from the allegations of Count I.  Accordingly, Count IV should be dismissed as duplicative of Count I and/or on the same basis as Count I.  *See Bible Way Church of Our Lord Jesus Christ of Apostolic Faith of Washington, D.C. v. Beards*, 680 A.2d 419, 432 (D.C. 1996) (affirming dismissal of count which repeated allegations made and relief sought; noting that under Super. Ct. Civ. R. 12(f), a trial court may "order stricken from any pleading any *redundant*, impertinent, or scandalous matter." (emphasis in original)).

To the extent that Count IV stands on its own, Doe appears to allege that the University owed her, as a law student, a special duty to protect her against the criminal conduct of Freundel.  Such an allegation cannot be squared with the District of Columbia Court of Appeals' decision in *Bd. of Trustees of Univ. of District of Columbia v. DiSalvo*, 974 A.2d 868 (D.C. 2009).  In that case, a student who was attacked by two unidentified armed assailants in a parking garage on the University of the District of Columbia ("UDC") campus brought a negligence action against UDC, claiming that it failed to take adequate safety precautions to prevent the attack.  Although the trial court found that plaintiff had pled sufficient evidence on the basis of which a jury could find that UDC had a greater obligation to foresee the possibility of the attack, the Court of

Appeals disagreed, holding that in the District of Columbia a university owes no greater duty to protect its adult students than it owes to the general public. *DiSalvo,* 974 A.2d at 870-71.

Moreover, assuming *arguendo* that the University owed Doe a special duty to protect her from the conduct of Freundel, she must meet a higher standard of foreseeability than would be required if the alleged conduct constituted mere negligence. *DiSalvo,* 974 A.2d at 870-71 (citing *Cook v. Safeway Stores, Inc.,* 354 A.2d 507, 509 (D.C. 1976) (noting that if "ordinary foreseeability itself gave rise to a duty to provide police protection for others, every residen[ce], every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner…. Of course none of this is at all palatable.")) (internal quotation marks and brackets omitted).

Doe has alleged nothing that meets a higher standard of foreseeability. She alleges in conclusory fashion that "Defendants had actual and/or constructive knowledge and/or notice of the danger posed by Freundel and had the ability to exercise control over him." Amended Complaint ¶ 174. The only factual allegations in support of that conclusion are the facially specious allegations that certain unnamed individuals gossiped about Freundel and that because the University (but *not* the Law Center) is allegedly located in the same "community" as Kesher Israel and NCM, the University was somehow placed on notice that Freundel might commit the crimes alleged. *See id.* ¶¶ 111-117. Doe, however, does not allege facts suggesting that someone who was in a position to receive actual notice on behalf of the University knew or should have known what people were talking about in the "community" or that any such individual thereafter failed to respond appropriately in any way.

In sum, Doe does not allege any facts that would indicate that the University either foresaw or should have foreseen that Freundel, while acting as supervising Rabbi at the NCM

mikvah, would secretly record women in the mikvah (or even that he would invite female law

students to the mikvah), much less facts that would satisfy the heightened requirement of

foreseeability.  Moreover, although Doe states that the University had a duty to her, she offers

nothing support this allegation.  *See Wanko v. Catholic Univ. of America*, No. 08-cv-2115, 2009

WL 3052477, at *6 (D.D.C. 2009) (negligence claim may not rest on mere conclusory assertions

as to the existence of any element of the claim, including duty).[9]  Count IV must be dismissed.

**F.      All six counts must be dismissed because they are essentially claims of negligent
         infliction of emotional distress without the requisite accompanying allegations**

All six of Doe's counts against the University are in essence claims that Freundel

sexually exploited her and invaded her privacy, leading to "great indignity, humiliation, shame,

embarrassment, mortification, and other injuries to [her] physical, mental, emotional and nervous

systems; severe emotional anguish, mental anguish, and psychological distress…." Amended

Complaint ¶ 130 (Count I), ¶ 141 (Count II), ¶ 153 (Count III), ¶ 167 (Count IV), ¶ 179 (Count

V), and ¶ 193 (Count VI).  No matter how Doe styles them, however, all six claims are in reality,

and should be construed as, different ways of alleging the same thing: negligent infliction of

emotional distress (NIED).[10]  *See Int'l Distributing Corp. v. American Dist. Tel. Co.*, 569 F.2d

136, 139 (D.C. Cir. 1976) (noting that courts can interpret claims based on the facts alleged, even

---

[9]      In *Wanko,* the Court dismissed a negligence claim in which plaintiff alleged "vaguely that
         [Catholic University] owed Plaintiff a duty to ensure that she was treated equally and not
         discriminated against" as a student, but failed to allege any basis for this purported duty.  *See also
         Varner v. District of Columbia,* 891 A.2d 260, 273 (D.C. 2006) (holding that where one student
         murdered plaintiffs' decedent who was also a student, plaintiffs could not rely upon "a general
         duty that a university would have to protect its students from harm from others" and that a
         specific standard of care with which the university failed to comply must be demonstrated).

[10]     The second class action case filed on behalf of Jane Doe 2 against Kesher Israel, NCM and RCA
         (see note 1 supra) contains virtually identical allegations of misconduct by Freundel and includes
         in Count II a claim for Negligent Infliction of Emotional Distress.

though not properly pled).  But Doe has failed to allege what she must in order to proceed on an NIED claim.

In the District of Columbia, a plaintiff like Doe who does not allege that she suffered direct physical injury or that she was within a zone of physical danger may recover for NIED only if she can show a "special relationship" between the defendant and herself of a nature that necessarily implicates her emotional well-being and can demonstrate "serious emotional distress" that must be "acute, enduring or life-altering."  *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 792, 811, 817 (D.C. 2011) (en banc).[11]  In *Hedgepeth,* the Court observed that most NIED claims will necessarily involve "special relationships" between doctors or psychiatrists/therapists and their patients.  *Id.* at 813.

Unlike the relationship between a physician or therapist and a patient, the relationship between a university and its student -- in Doe's case an adult third-year law student -- does not support an NIED claim and there is no authority to suggest otherwise.  Although Doe alleges in conclusory terms that the University owed her "a special duty of care by virtue of plaintiff's relationship as a student enrolled at Georgetown Law" (Amended Complaint ¶ 176), that allegation misstates the law and Doe has not alleged any facts to support it.  To allow Doe to proceed on the basis of what she has alleged would subject universities to litigation every time a student was displeased with something the university or a professor did or failed to do and claimed to be emotionally damaged by it.

---

[11]    *See also Bahura v. S.E.W. Investors,* 754 A.2d 928, 937 (D.C. 2000) (holding that NIED-related injury must be  "serious and verifiable").  "Serious and verifiable" means that the distress must have manifested itself in an external condition or physical symptoms.  *Jones v. Howard Univ. Inc.,* 589 A.2d 419, 424 (D.C. 1991).  Emotional distress that is considered "serious and verifiable" includes "long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration." *Williams v. Baker*, 572 A.2d 1062, 1068 (D.C. 1990).

Moreover, Doe has not alleged "serious and verifiable" or "acute, enduring or life altering" emotional distress.  Nor has she alleged that she received treatment for "an external condition or physical symptoms."  Nothing that she has alleged rises to the level of emotional distress required by *Hedgepeth*.

## CONCLUSION

For the reasons stated above and any other reasons the Court deems appropriate, Georgetown University respectfully requests that the Court grant its motion and enter an Order dismissing all of Doe's claims against the University.

Dated: January 13, 2015                          Respectfully submitted,


                                                 */s/  William D. Nussbaum*
                                                 William D. Nussbaum (DC Bar # 941815)
                                                 wnussbaum@saul.com
                                                 Carolyn Due (DC Bar # 1001542)
                                                 cdue@saul.com
                                                 Saul Ewing LLP
                                                 1919 Pennsylvania Ave., NW, Suite 550
                                                 Washington, DC 20006
                                                 (202) 295-6652 telephone
                                                 (202) 295-6715 facsimile

                                                 *Counsel for Defendant Georgetown University*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of January, 2015, a true and correct copy of the foregoing **Motion to Dismiss Amended Class Action & Individual Complaint** was served via the Court's electronic filing system on:

Anne Toomey McKenna
Toomey McKenna Law Group, LLC
8 Montrose Avenue
Baltimore, MD 21228
*Counsel for Plaintiffs*

Steven J. Kelly
Silverman Thompson Slutkin White LLC
201 N. Charles Street, Suite 2600
Baltimore, Maryland 21201
*Counsel for Plaintiffs*

Paul Blankenstein
Maura McCormick Logan
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave., NW, Suite 900
Washington, DC 20036
*Counsel for Defendant Georgetown Synagogue-Kesher Israel Congregation*

Edward Clark Bacon
Patricia Maureen Thornton
Bacon, Thornton & Palmer, LLP
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770
*Counsel for Defendant National Capital Mikvah, Inc.*

*/s/ William D. Nussbaum*
William D. Nussbaum