IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANE DOE, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case Number 1:15-cv-00026 (CRC) |
| v. | ) | |
| | ) | |
| GEORGETOWN UNIVERSITY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT GEORGETOWN UNIVERSITY'S RESPONSE TO JANE DOE'S
MOTION TO SEVER AND REMAND ALL CLAIMS AGAINST GEORGETOWN AND
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Georgetown University ("the University") respectfully files this response to

Jane Doe's motion to sever and remand all claims against the University.  Because Doe has

combined her motion to sever and remand with her opposition to the University's motion to

dismiss, the University also files here its reply in support of the motion to dismiss.

**Response to Motion to Sever and Remand**

The University does not oppose the motion to sever and remand.  In footnote 2 of the

memorandum in support of its motion to dismiss ("memorandum"), the University asserted that

if the motion to dismiss was not granted in full and the Court ruled that this case could proceed

as a class action, the University anticipated filing a motion to sever because of the manifest

prejudice it would face if it were forced to defend itself as an individual defendant in a class

action lawsuit against other parties.

As for remand, the University did not request removal of this case, and it agrees that once

Doe's claims against it are severed from the class action claims she and her co-plaintiffs have

asserted against the class action defendants, there is no reason for the case against the University

to remain in federal court.

The University anticipates that, once the Court grants Doe's motion to sever and remand, the Court will decline to consider the University's pending motion to dismiss because it makes more sense for the Superior Court judge to whom the remanded case is assigned to hear the dismissal motion.  Before the Superior Court considers the motion to dismiss, presumably Doe will amend her complaint in Superior Court for the purpose of alleging -- as she states in an affidavit attached to her opposition -- that she now understands she is one of the individuals depicted in recordings the Metropolitan Police Department seized from Rabbi Bernard Freundel. The University will then file a new motion to dismiss in response to the allegations of the new complaint.  However, because Doe has elected to file an opposition to the motion to dismiss at this time, the University offers the following reply in support of its motion.

## Reply in Support of Motion to Dismiss

Doe has asserted six causes of action against the University, including Negligent Hiring, Training, Retention and Supervision (Count I), Negligent Entrustment (Count II), Vicarious Liability- Respondeat Superior Negligent & Negligence Per Se (Count III), Direct Negligence (Count IV), Vicarious Liability- Respondeat Superior Invasion of Privacy – Intrusion Upon Seclusion (Count V), Vicarious Liability- Respondeat Superior -- Violation of D.C. Code Ann. ¶23-542(a) –Wiretapping (Count VI).  All of her claims grow out of recent allegations that Freundel, then the Rabbi of the Georgetown Synagogue-Kesher Israel Congregation ("Kesher Israel"), surreptitiously photographed, videotaped and/or audio-recorded women as they engaged in Jewish ritual bathing at the National Capital Mikvah, Inc. ("NCM") near the synagogue.

In its memorandum, the University argued as a threshold matter that all six counts must be dismissed under Fed. R. Civ. P. 12(b)(1) because Doe lacks standing to assert them.[1]  The

---

[1]     "The defect of standing is a defect in subject matter jurisdiction."  *Silvious v. Coca-Cola Co.,* 893 F. Supp. 2d 233, 235-36 (D.D.C. 2011)

argument was premised upon Doe's failure to allege without qualification anywhere in her

Amended Complaint that *she* was photographed, videotaped and/or audiorecorded by Freundel at

NCM's mikvah.  The University argued that, without such an allegation, Doe had failed to plead

a non-hypothetical injury-in-fact that is a prerequisite to standing.  *See Silvious v. Coca Cola Co.,*

893 F. Supp. 2d 233, 236 (D.D.C. 2011); *Atlantic Urological Assocs., P.A. v. Leavitt*, 549 F.

Supp. 2d 20, 26 (D.D.C. 2008); *Arias v. Dyncorp.*, 738 F. Supp. 2d 46, 49 (D.D.C. 2010).  The

University also argued that, on the same basis, each of the six counts must be dismissed under

Fed. R. Civ. P. 12 (b)(6) because injury, which Doe had failed to plead, is an essential element of

a negligence claim in the District of Columbia.  *Powell v. District of Columbia,* 602 A.2d 1123,

1133 (D.C. 1992).

Doe's opposition does not dispute those legal principles.  But in her opposition, for the

first time, Doe asserts in an affidavit that she recently was informed by authorities that she is

among the women recorded by Freundel at NCM's mikvah.  If that is so – and Doe has not yet

formally alleged it, as she must, in a pleading – then the University's Rule 12(b)(1) standing

argument is moot.  So is the University's related Rule 12(b)(6) argument.[2]  Accordingly, on the

basis of Doe's affidavit and subject to Doe's amending her Amended Complaint consistent with

her affidavit, the University will no longer press its Fed. R. Civ. P. 12(b)(1) standing argument or

its argument that failure to allege injury requires dismissal of all of Doe's claims under Fed. R.

Civ. P. 12 (b)(6).  But until Doe amends her Amended Complaint, the University stands by those

arguments, and if the Court decides to rule on the University's motion before the Amended

Complaint is amended, those arguments should compel the Court to grant the motion.

---

[2]     The University made those arguments, of course, because Doe filed her Amended Complaint
        prior to being informed that she had been recorded by Freundel.

The University also raised other Rule 12(b)(6) arguments in response to each of Doe's six counts.  As discussed below, the opposition has failed to meet those arguments.  As a threshold matter, the University reiterates that it does not excuse or condone the abhorrent conduct of which Freundel has been accused, and is offended by Doe's insinuations to the contrary.  But whatever Freundel did and whatever any other party knew about it or could and should have done to prevent it, the University should not have been sued, and none of Doe's six counts properly pleads a claim against the University.

***Count I (negligent hiring, retention and supervision) must be dismissed***

To properly plead a claim of negligent hiring, retention and supervision in the District of Columbia, a plaintiff must allege facts indicating (1) that the employer knew or should have known that its employee behaved in a dangerous or otherwise incompetent manner; and (2) that the employer, armed with actual or constructive knowledge, failed to adequately supervise the employee.  *Giles v. Shell Oil Corp.,* 487 A.2d 610, 613 (D.C. 1985); *see also Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005).

There are simply no facts alleged in the Amended Complaint that assert that anyone at the University had any knowledge that Freundel was engaged in misbehavior at the NCM mikvah.   Instead, Doe has made only boilerplate allegations.[3]  And she premises her attribution

---

[3]     Doe alleges that defendants "owed a continuing duty to: reasonably, carefully, and conscientiously secure the services of qualified and well-trained agents, servants and/or employees; to properly investigate, credential, qualify, select, monitor, and supervise their agents, servants, and/or employees; to promulgate and enforce proper and effective standards, procedures, protocols, systems and rules to ensure quality care, safety, and privacy of Plaintiffs and members of the Class; and to otherwise assure and maintain the safety and privacy of Plaintiffs and members of the Class." Amended Complaint ¶137.  Doe further alleges that "[d]efendants negligently breached the above-mentioned duties by hiring, retaining, failing to properly train, and failing to properly supervise Freundel, despite his reputation for improper, unlawful, inappropriate, lewd, and unprofessional conduct." *Id.* ¶138.  And she alleges that "[d]efendants knew or should have known that Freundel engaged in improper, unlawful, inappropriate, lewd, and unprofessional conduct, including, but not limited to, photographing and/or videotaping Plaintiffs and other Class Members while naked and without consent or

of knowledge to the University – without which this claim cannot proceed – on allegations that

Freundel had a "reputation," and that the University was aware of this supposed "reputation."

But to repeat Doe's allegations is to refute them: she observes -- in total disregard of the distance

between Kesher Israel/NCM's mikvah and the Law Center  -- that "Kesher Israel is located in *the*

*same community* as Georgetown's main campus, where members of Washington's elite reside

and socialize [,]" and says that "*[u]pon information and belief*, members of the Georgetown

University faculty" (none of whom Doe identifies) "were congregants at Kesher Israel and were

active in the congregation throughout Freundel's tenure as Kesher Israel's Rabbi."  Amended

Complaint at ¶¶ 111-12 (emphasis added).  Doe does not say, however, that any specific person

spoke with anyone at the University, or that anyone at the University who was in a position to

receive notice for the University was ever told, overheard or learned anything to suggest that

Freundel was engaging in misconduct at a ritual bath with which the University has no

connection and which is located miles from the Law Center.

The Amended Complaint also contains no non-conclusory factual allegations about how --
or who at -- the University was negligent in hiring, training or supervising Freundel.  *See Di*

*Feng v. Lim*, 786 F. Supp. 2d 96, 107 (D.D.C. 2011) (plaintiff must allege "facts that show the

employer knew or should have known its employee behaved in a dangerous or otherwise

incompetent manner, and that the employer, armed with that actual or constructive knowledge,

failed to adequately supervise the employee;" holding that conclusory allegations that employer

could have and should have more closely supervised employee are insufficient to state a claim

for negligent supervision); *Clark v. Computer Sci. Corp.*, 958 F. Supp. 2d 208, 214 (D.D.C.

2013) (dismissing negligent hiring, training, supervision and retention claim because plaintiff

---

authorization, and distributing and/or publishing those images and/or videos without consent or
authorization." *Id.* ¶139.

failed "to state facts to explain how defendants were purportedly negligent in how they hired, trained, or supervised their employees.")

In her opposition, Doe agrees that the legal standard cited by the University applies to this claim. *See* Opposition at 13. Doe insists, however, that the allegations in her Amended Complaint "demonstrate that Georgetown had *actual knowledge* of Freundel's potential threat to students and that Georgetown did nothing to address that threat." *Id.* In support of this assertion, Doe says that Rabbi Saperstein graded her paper, in which she says she described her multiple immersions at the NCM mikvah. *Id.* However, the Amended Complaint does *not* say that Saperstein knew that Freundel was committing criminal acts against women at the mikvah. The Amended Complaint alleges nothing to suggest that Saperstein had actual knowledge, or even constructive knowledge, that Freundel was recording women at the mikvah. All the Amended Complaint says on this subject is that Saperstein co-taught the Jewish Law Seminar with Freundel, *id.* ¶ 3, and that both Freundel and Saperstein gave Doe's paper an "A". *Id.* ¶ 61. That is insufficient to support Doe's negligent hiring, retention and supervision claim.

In her opposition, Doe relies upon *BDO Seidman, LLP v. Morgan, Lewis & Bockius, LLP*, D.C. Super. Ct. No. 2009-ca-009640, 2012 WL 4892435 (June 21, 2012), an unreported decision from the Superior Court of the District of Columbia. But that case addressed whether the knowledge of BDO's partners, agents and general counsel should be imputed to BDO. The Superior Court held that, under the D.C. Uniform Partnership Act of 2010, a partner's knowledge could be imputed to the partnership. The court also held that the knowledge of BDO's general counsel could be imputed to BDO because, even though he was not a BDO partner, "his knowledge of the facts and legal issues confronting BDO are those within his duty as an agent of BDO[.]" *Id.* at 15.

Contrary to the plaintiff in *BDO*, Doe has alleged nothing to indicate that *anyone* at or affiliated with the University – much less anyone in a management position with the University or the Law Center -- had actual knowledge of Freundel's alleged conduct at the mikvah.  Even if Freundel's teaching partner and fellow adjunct professor Saperstein's knowledge could be imputed to the University, there are no facts alleged in the Amended Complaint that indicate he had *any* knowledge that Freundel was engaged in illegal activity at the mikvah.  Count I must be dismissed.

### Count II (negligent entrustment) must be dismissed

To prove negligent entrustment in the District of Columbia, a plaintiff must show that the defendant made an object or chattel available to a third person whom the defendant knew or should have known was likely to use that object in a manner involving a risk of physical harm to others.  *Phelan v. City of Mount Rainier*, 805 A.2d 930, 941 (D.C. 2002); *Young v. U-Haul Co. of D.C.*, 11 A.3d 247, 249 (D.C. 2011).  Count II fails because Doe has neither alleged that the University specifically made anything tangible available to Freundel -- not the mikvah, not the clock-radio Freundel allegedly used to record his victims, not anything else -- nor alleged any facts suggesting that the University knew or should have known anything that would have reasonably placed it on notice of the possibility that Freundel would misuse anything that was entrusted to him by anyone.  Count II also must be dismissed because Doe has not alleged that she suffered physical harm or that she was placed at risk of physical harm, as *Phelan* requires.

In her opposition, Doe argues that her allegation that the University entrusted Freundel with "facilities, devices, equipment, machines and/or supplies" is sufficient to show "specific facts" that the University entrusted Freundel with "chattels or objects."  Opposition at 14-15. Doe then makes specific references to Freundel's use of a Georgetown email account,

telephones, offices and other such things, *none* of which are even mentioned in her Amended

Complaint. *Id.* at 15. But even if Doe had identified those items in her Amended Complaint

instead of in her opposition to a motion to dismiss, she fails even now to allege that those

"chattels or objects" were used to inflict physical harm on anyone, including Doe, as is required

for a negligent entrustment claim.[4]

Because there is no allegation in the Amended Complaint that the University supplied

Freundel with *anything* that was used in a manner involving a risk of physical harm to others,

Count II must be dismissed.

***Counts III, IV, V, and VI (respondeat superior claims) must be dismissed***

Counts III, IV, V and VI are based on the doctrine of respondeat superior, which allows

an employer to be held liable for acts of employees committed within the scope of their

employment. In the District of Columbia, conduct is considered within the scope of

employment only if: (1) it is of the kind the employee is employed to perform; (2) it occurs

substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a

purpose to serve the master; and (4) if force is intentionally used by the servant against another,

the use of force is not unexpected by the employer. By contrast, conduct is *not* within the scope

of employment if it is different in kind from that authorized, far beyond the authorized time or

space limits, or too little actuated by a purpose to serve the employer. *Schecter v. Merchants*

*Home Delivery, Inc.*, 892 A.2d 415, 430 (D.C. 2006) (concluding as a matter of law that

defendant's employees who stole items from plaintiff's home were not acting within the scope of

---

[4]     In *Phelan*, for example, the object that was allegedly negligently entrusted was a gun, which was
used by an off-duty police officer to shoot and kill plaintiff's son. The Court of Appeals found
that the negligent entrustment claim was insufficient as a matter of law because there were no
facts alleged to show that the defendant knew or should have known that the officer was likely to
use the gun in a manner involving risk of physical harm to others.

their employment and that defendant could not be held liable under the doctrine of respondeat superior). *See also Doe v. Slipper*, 821 F. Supp. 2d 384 (D.D.C. 2011); *Boykin v. District of Columbia,* 484 A.2d 560, 561-62 (D.C. 1984).

The conduct alleged here -- Freundel's secret recording of Doe in the NCM mikvah – cannot reasonably be viewed as falling within the scope of Freundel's employment as an adjunct professor at the Law Center. Nothing the University asked or reasonably expected Freundel to do as an adjunct member of the Law Center faculty included photographing, videotaping or audio-recording Doe while she participated in a ritual bath at NCM's mikvah. In her opposition Doe has not responded to this argument. Nor has she explained why the criminal conduct in which Freundel is alleged to have engaged is not "different in kind" from teaching law, or how it was "actuated by" any "purpose to serve" the University. It defies credulity to suggest that it was.

The cases Doe cites in her opposition are inapposite. As an initial matter, Doe attempts to distance herself from *Schecter*, *Slipper* and *Boykin*. She argues that *Schecter* "relied on a long line of cases holding that employers were not liable where employees participated in the theft of property from a customer's home or business premises." Opposition at 17. However, in *Schecter*, the Court of Appeals found that for the same reason articulated in *Boykin*, the connection between the law-breakers' employment by defendant and the criminal act in which defendant's employees engaged was "too attenuated" to demonstrate that they were acting within the scope of their employment. *Schecter*, 892 A.2d at 431. Despite Doe's arguments, *Schecter, Slipper* and *Boykin* are fatal to her respondeat superior claims.

Doe argues that invasion of privacy, wiretapping, and other alleged (and unalleged) violations by Freundel "may be deemed a direct outgrowth of an adjunct professor's

authorization to invite students to participate in experiential learning at an off-campus location with the consent of the University." Opposition at 17-18. This argument is similar to an argument the court rejected in *Boykin*, in which the plaintiff claimed that a sexual assault committed by an instructor was an outgrowth of the instructor's employment because his job required him to touch students. The University's case is even stronger. There are no allegations that Freundel's duties to the University included surreptitiously photographing, videotaping and/or audio-recording anyone at the mikvah, let alone women in a state of undress. Just as sexual assault in *Boykin* "was not a direct outgrowth" of the instructor's job assignment, or an "integral part of the school's activities, interests or objectives," Freundel's alleged crimes are not a "direct outgrowth" of the job of being an adjunct professor. *Boykin*, 484 A.2d at 562. Like the instructor's actions in *Boykin*, Freundel's alleged actions "appear to have been done solely for the accomplishment of [] independent, malicious, mischievous and selfish purposes." *Id.* Moreover, Doe has not made -- and cannot make -- even the conclusory allegation that Freundel's alleged conduct at the mikvah was in any way in furtherance of the University's business interests.[5]

In an effort to save her respondeat superior claims, Doe insists that her case is similar to *Doe by Doe v. B.P.S. Guard Servs., Inc.*, 945 F.2d 1422 (8th Cir. 1991). In *B.P.S.*, security guards used television surveillance cameras to watch and videotape models as they changed clothes. Unlike Freundel, the security guards were acting within the scope of their employment by watching the surveillance tapes. As the Eighth Circuit noted, "[i]n this case the guards were

---

[5]     Even if Doe made such an allegation, it would not be entitled to the assumption of truth. *See Sipper*, 821 F. Supp. 2d at 389 ("Although Plaintiff has alleged that Sipper committed the rape 'in furtherance of his employer's business interest, and with a desire, at least in part, to serve his employer's business interests, she never alleges how this could be. Such conclusory allegation is not entitled to the assumption of truth.")

doing what their employer had told them to do – practice taping with the VCR.  There is even evidence that persons having supervisory rank were aware of the particular way in which the guards were practicing with the VCR the night before the events in question."  *Id.* at 1426. Moreover, the court found that the guards were acting, in part, to serve their employer, even if their predominant motive may have been to benefit themselves.  *Id.*  In contrast, Doe has not alleged that Freundel was surreptitiously recording women at the mikvah at the University's direction or that such conduct furthered the University's interests in any way.

Because Doe has failed to allege facts necessary to invoke the doctrine of respondeat superior, Counts III, IV, V and VI must be dismissed.

### *Count IV (direct negligence) must be dismissed*

To the extent Count IV is not a respondeat superior claim, it nevertheless must be dismissed.  To establish direct negligence, the plaintiff must show: (1) the applicable standard of care; (2) a deviation from that standard by defendant; and (3) a causal relationship between that deviation and her injury.  *Holder v. District of Columbia,* 700 A.2d 738, 741 (D.C. 1997).  Here, Doe appears to allege that the University owed her, as a graduate law student, a special duty to protect her against the criminal conduct of Freundel.  Such an allegation cannot be squared with the District of Columbia Court of Appeals' decision in *Bd. of Trustees of Univ. of District of Columbia v. DiSalvo*, 974 A.2d 868 (D.C. 2009), which holds that a university owes no greater duty to protect its adult students than it owes to the general public.  *DiSalvo,* 974 A.2d at 870-71.

Even assuming the University owed Doe a special duty to protect her from the conduct of Freundel, she must meet a higher standard of foreseeability for a criminal act than would be required if the alleged conduct constituted mere negligence. *DiSalvo*, 974 A.2d at 870-71 (citing

*Cook v. Safeway Stores, Inc.,* 354 A.2d 507, 509 (D.C. 1976) (noting that if "ordinary

foreseeability itself gave rise to a duty to provide police protection for others, every residen[ce],

every shop,  every store, every manufacturing plant would have to be patrolled by the private

arms of the owner…. Of course none of this is at all palatable.")) (internal quotation marks and

brackets omitted).

    Doe has not alleged anything to satisfy this higher standard of forseeability.[6]  She alleges

no facts indicating that the University either foresaw or should have foreseen that Freundel,

while acting as supervising Rabbi at the NCM mikvah, would secretly record women in the

mikvah, much less facts that would satisfy the heightened requirement of foreseeability.

Although Doe states that the University had a special duty to protect her, she offers nothing to

support this allegation.  *See Wanko v. Catholic Univ. of America*, No. 08-cv-2115, 2009 WL

3052477, at *6 (D.D.C. 2009) (negligence claim may not rest on mere conclusory assertions as

to the existence of any element of the claim, including duty).

    Doe's opposition does not meet these arguments.  All of the cases she cites require that

the heightened foreseeability requirements be met, with the court in each case finding that a

combination of factors gave defendants an increased awareness of the danger that a particular

criminal act would be committed.  For example, in *Gates v. United States*, 928 F. Supp. 2d 63

(D.D.C. 2013), the court found that the complaint alleged facts sufficient to meet the heightened

---

[6]     Doe alleges that "Defendants had actual and/or constructive knowledge and/or notice of the
danger posed by Freundel and had the ability to exercise control over him."  Amended Complaint
¶ 174.  The only factual allegations in support of that conclusion are that certain unnamed
individuals gossiped about Freundel and that because the University (but *not* the Law Center) is
allegedly located in the same "community" as Kesher Israel and NCM, the University was on
notice that Freundel might commit the crimes alleged.  *See id.* ¶¶ 111-117.  Doe, however, does
not allege facts suggesting that someone who was in a position to receive actual notice on behalf
of the University knew or should have known what people were talking about in the
"community" or that any such individual thereafter failed to respond appropriately in any way.

foreseeability requirements because it contained allegations that the District of Columbia had placed Gates in a safe-home, gave her the phone numbers of District agents, and was aware that Gates had helped prosecute the third party for attempting to burn down Gates's apartment. Similarly, in *Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172 (D.D.C. 2007), the court noted that the heightened foreseeability requirements could be met because Hope Village had voluntarily assumed custody of dangerous individuals, including violent felons, and because the third party who committed the crime was a "career criminal" with a history of violent crimes and escape from halfway houses. *Id.* at 189.

No such facts are alleged here. Doe has not alleged that the University was aware of anything in Freundel's past suggesting he would commit any crime, much less the crimes for which he has been arrested. Nor are there any allegations in the Amended Complaint that the University undertook any special duty to Doe with respect to Freundel's conduct. D.C. law holds that universities owe no greater duty to protect adult students than it owes to the general public, and Doe has offered nothing to suggest otherwise. Accordingly, Count IV must be dismissed not only because respondeat superior does not apply but on this basis as well.

***All six counts must be dismissed because they are essentially claims of negligent infliction of emotional distress without the requisite accompanying allegations***

All six of Doe's counts are in essence claims that Freundel sexually exploited her and invaded her privacy, leading to "great indignity, humiliation, shame, embarrassment, mortification, and other injuries to [her] physical, mental, emotional and nervous systems; severe emotional anguish, mental anguish, and psychological distress…" which the University negligently allow to occur. No matter how Doe styles them, all six claims are in reality different ways of alleging the same thing: negligent infliction of emotional distress (NIED). *See Int'l*

*Distributing Corp. v. American Dist. Tel. Co.*, 569 F.2d 136, 139 (D.C. Cir. 1976) (noting that courts can interpret claims based on the facts alleged, even though not properly pled).

But Doe has failed to allege what she must in order to proceed on an NIED claim in which she is not alleging physical injury or that she was within a zone of physical danger. Specifically, she has not alleged a special relationship with the University or the existence of serious emotional distress that is acute, enduring or life-altering and for which she received treatment for an external condition or physical symptoms. *See Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 792, 811, 817 (D.C. 2011) (en banc); *Bahura v. S.E.W. Investors,* 754 A.2d 928, 937 (D.C. 2000); *Jones v. Howard Univ. Inc.*, 589 A.2d 419, 424 (D.C. 1991).

Doe's opposition dismisses these arguments but does not rebut them. First, Doe does not cite any case law to support her argument that the court may not look beyond the "formal labels of causes of action" and address the claims based on the facts alleged therein. Second, as Doe herself has stated, this case involves a "privacy violation" by Freundel that caused her "extreme emotional anguish" and there are no other damages alleged. Opposition at 2. Accordingly, despite the many different counts alleged, it is appropriate to consider all of the counts as different ways of alleging negligent infliction of emotional distress. Here Doe has failed to allege facts necessary to the claim under *Hedgepeth* and other cases the University cited in its memorandum. Therefore, all six counts must be dismissed.

## CONCLUSION

For the reasons stated above and in the memorandum in support of defendant Georgetown University's motion to dismiss, and for any other reasons the Court deems appropriate, the University respectfully requests that the Court grant its motion and enter an Order dismissing all of Doe's claims against the University. Although the University

sympathizes with Doe and agrees that Freundel's alleged behavior is egregious and

unacceptable, the University is not responsible for it.


Dated: February 9, 2015                          Respectfully submitted,



                                                 /s/ William D. Nussbaum
                                                 William D. Nussbaum (DC Bar #941815)
                                                 wnussbaum@saul.com
                                                 Carolyn Due (DC Bar #1001542)
                                                 cdue@saul.com
                                                 Saul Ewing LLP
                                                 1919 Pennsylvania Avenue, NW, Suite 550
                                                 Washington, DC 20006
                                                 (202) 295-6652 telephone
                                                 (202) 295-6715 facsimile
                                                 *Counsel for Defendant Georgetown University*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 9th day of February, 2015, a true and correct copy of Defendant Georgetown University's Response to Jane Doe's Motion to Sever and Remand All Claims Against Georgetown and Reply in Support of Its Motion to Dismiss was served via the Court's electronic filing system on:

Steven J. Kelly
Geoffrey Hengerer
Silverman Thompson Slutkin White LLC
201 N. Charles Street, Suite 2600
Baltimore, Maryland 21201
*Counsel for Plaintiffs*

Anne Toomey McKenna
TOOMEY MCKENNA LAW GROUP, LLC
8 Montrose Avenue
Baltimore, MD 21228
*Counsel for Plaintiffs*

Paul Blankenstein
Maura McCormick Logan
GIBSON, DUNN & CRUTCHER, L.L.P.
1050 Connecticut Avenue, NW
Suite 900
Washington, DC 20036-5306
*Counsel for Defendant Georgetown*
*Synagogue-Kesher Israel Congregation*

Edward Clark Bacon
Patricia Maureen Thornton
BACON, THORNTON & PALMER, LLP
Capital Office Park
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770-1411
*Counsel for Defendant National Capital Mikvah, Inc.*

Guy G. Brenner
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004
*Counsel for Defendant Histadruth Horabonim*
*Deamerica-Rabbinical Council of America, Inc.*

-17-

Mark D. Harris
PROSKAUER ROSE, LLP
Eleven Times Square
New York, NY 10036-6522
*Counsel for Defendant Histadruth Horabonim*
*Deamerica-Rabbinical Council of America, Inc.*


                                        */s/ William D. Nussbaum*
                                        William D. Nussbaum