## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, *et al.* | |
| *Plaintiffs*, | |
| **v.** | Civil Action No. 1:15-cv-00026-CRC |
| THE GEORGETOWN UNIVERSITY, *et al.*, | |
| *Defendants*. | |

### PLAINTIFFS' MOTION FOR REMAND OR, IN THE ALTERNATIVE, FOR LIMITED JURISDICTIONAL DISCOVERY

Named Plaintiffs Jane Doe, Emma Shulevitz, and Stephanie Smith ("Plaintiffs"), by and through undersigned counsel, on behalf of themselves and the proposed class of similarly situated individuals, and pursuant to 28 U.S.C. §§ 1447(c) and 1332(d), hereby respectfully move this Court to remand this case to the Superior Court of the District of Columbia. In the alternative, Plaintiffs hereby respectfully move this Court to temporarily stay this case and permit limited and specific jurisdictional discovery for the purposes of determining whether remand is appropriate and/or required under 28 U.S.C. § 1332(d). A statement of points and authorities, along with a proposed order, accompany this Motion.

Dated: February 9, 2015

Respectfully submitted,

 /s/ *Steven J. Kelly*
Steven J. Kelly (D.C. Bar No. 1021534)
SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC
201 N. Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel:    410.385.2225
Fax:    410.547.2432
skelly@mdattorney.com

*Counsel for Named Plaintiffs Jane Doe, Emma Shulevitz, and Stephanie Smith*

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, *et al.* | |
| *Plaintiffs,* | |
| v. | Civil Action No. 1:15-cv-00026-CRC |
| THE GEORGETOWN UNIVERSITY, *et al.,* | |
| *Defendants.* | |

**PLAINTIFFS' STATEMENT OF POINTS & AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR REMAND OR, IN THE ALTERNATIVE,
FOR LIMITED JURISDICTIONAL DISCOVERY**

Plaintiffs Jane Doe ("Ms. Doe"), Emma Shulevitz ("Ms. Shulevitz"), and Stephanie Smith ("Ms. Smith") (collectively, "Plaintiffs" or "Named Plaintiffs"), by and through their undersigned counsel, on behalf of themselves and the proposed class of similarly situated individuals, hereby submit this Statement of Points and Authorities in Support of Their Motion for Remand or, in the Alternative, for Limited Jurisdictional Discovery. Though remand is appropriate at this stage for numerous reasons, should the Court find it lacks sufficient information to make such a determination at this time, Plaintiffs request that the Court permit them to engage in limited and specific jurisdictional discovery to enable the Court to determine whether abstention under the exceptions to the Class Action Fairness Act is appropriate and/or required.

## I.      INTRODUCTION

This case should be remanded to the Superior Court of the District of Columbia for two principal reasons.

First, Defendants failed to meet their evidentiary burden of establishing that applicability of the Class Action Fairness Act of 2005 ("CAFA"), the only basis for this Court's subject matter jurisdiction over the case. In particular, Defendants cannot demonstrate that CAFA's

threshold "amount in controversy" requirement is satisfied based on the face of the Amended Complaint. That failure deprives this Court of subject matter jurisdiction and requires this Court to remand the action without further inquiry.

Second, even if the Court finds that CAFA applies, this case falls squarely within the category of local controversies that CAFA permits this Court to remand "in the interest of justice." This case concerns pernicious wrongdoing that was carried out in a ***single location within the District of Columbia***. The action was brought on behalf of a class of women who engaged in the sacred religious ritual of "mikvah" at a facility located on 28th Street in northwest D.C. Each of these women is reeling from recent revelations that prominent ***D.C.*** Rabbi Bernard "Barry" Freundel placed illicit surveillance cameras in the facility for the purposes of sexually exploiting those engaged in sacred religious rituals. The case is being investigated by the ***D.C. Metropolitan Police Department*** and criminal charges are pending against Freundel in ***D.C. Superior Court***. Plaintiffs filed suit in the ***D.C. Superior Court*** alleging *claims solely under **D.C.** law* against primarily ***D.C. defendants***. Indeed, the overwhelming bulk of the evidence, witnesses and evidence is located *in **D.C.*** Accordingly, this is precisely the type of ***local*** controversy that Congress intended to exempt from CAFA and the Court should exercise its broad discretion to remand the case to the D.C. Superior Court—the forum with the strongest interest in litigating this case.

Alternatively, to the extent the Court declines to remand the case for lack of subject matter jurisdiction and/or under CAFA's discretionary exception, Plaintiffs respectfully request that the Court grant them the right to conduct limited jurisdictional discovery. As set forth below, Plaintiffs seek carefully tailored jurisdictional discovery that will establish, at a minimum, that the Court should remand the case under CAFA's discretionary exception. Given the strong

likelihood that the case will ultimately be remanded under the CAFA exceptions, permitting limited discovery at this stage serves the interest of the parties and the Court.

## II.   FACTUAL & PROCEDURAL BACKGROUND

### A.   PROCEDURAL BACKGROUND

On December 2, 2014, Ms. Doe commenced an action in the Superior Court of the District of Columbia (the "Superior Court Action") by filing a Class Action and Individual Complaint (the "Complaint"). Ms. Doe's Complaint asserts class action claims against Defendants The Georgetown Synagogue – Kesher Israel Congregation ("Kesher Israel") and The National Capital Mikvah, Inc. ("NCM"). Ms. Doe's Complaint also asserts individual claims against Defendant The Georgetown University.[1] All causes of action asserted against Defendants arise under D.C. law. (*See* Compl. [ECF 1-2].)

On December 18, 2014, Ms. Doe, joined by Ms. Shulevitz and Ms. Smith, filed an Amended Class Action and Individual Complaint (the "Amended Complaint") in the Superior Court Action. The Amended Complaint added Histadruth Horabonim Deamerica—Rabbinical Council of America, Inc. (the "RCA") as a third putative class-action defendant. (*See* Am. Compl. [ECF 1-2].)  RCA is a resident of New York.  (*Id.* ¶ 18.)

On January 8, 2015, Defendants Kesher Israel and NCM (the "Removing Defendants") removed the Superior Court Action to this Court pursuant to CAFA, 28 U.S.C. §§ 1332(d), 1453, 1711, thereby commencing this action. (*See* Notice of Removal [ECF 1].) Kesher Israel and NCM base the removal on the grounds set forth in Section 1332(d)(2). (*See id.* at 2.) The RCA did not join in the removal of the Superior Court Action.  (*See id.*)

---

[1]   On January 13, 2015, Georgetown filed a Motion to Dismiss in this Court. [ECF 8.] On January 20, 2015, Ms. Doe timely filed a Motion to Sever and Remand All Claims Against Georgetown [ECF 16] and a Combined Statement of Points and Authorities in Support of the Motion to Sever and Remand All Claims Against Georgetown and in Opposition to Georgetown's Motion to Dismiss [ECF 15]. These motions are pending.

Also on January 8, 2015, Removing Defendants filed a motion seeking to consolidate this action with another class action (the "Later-Filed Action") that they removed from D.C. Superior Court pursuant to CAFA.[2] (*See* Mot. to Consolidate [ECF 2].) The Later-Filed Action was initially filed in D.C. Superior Court on December 18, 2014, and includes similar class action claims against Defendants Kesher Israel, NCM, and the RCA.

On January 12, 2015, Removing Defendants filed an Amended Notice of Removal. (*See* Am. Notice of Removal [ECF 7].) On January 21, 2015, this Court issued a Stipulation and Order [ECF 13] deferring NCM and Kesher Israel's response to the Amended Complaint and Plaintiffs' obligation to respond to the consolidation motion until after the Court decides the issue of remand.

### B.  RELEVANT JURISDICTIONAL ALLEGATIONS IN THE AMENDED COMPLAINT

As alleged in the Amended Complaint, Ms. Doe resides in the District of Columbia, (Am. Compl. ¶ 12), Ms. Shulevitz resides in Rockville, Maryland, (*id.* ¶ 13), and Ms. Smith resides in Towson, Maryland, (*id.* ¶ 14). Kesher Israel and NCM are organized under the laws of the District of Columbia and maintain their principal places of business within the District of Columbia. (*Id.* ¶¶ 16-17.) Plaintiffs define the "Proposed Class" as

> all women who participated in an immersion ritual at the NCM/Kesher Israel Mikvah (the "immersion"): (i) while Freundel was an actual and/or apparent agent, servant, and/or employee of Kesher Israel, NCM, and/or the RCA, (ii) where Freundel initiated, arranged, participated in or was otherwise involved in the immersion, and (iii) who, through cameras, surveillance equipment, recording devices, or other surreptitious means positioned or contrived by Freundel individually or at his request or direction, were involuntarily and secretly photographed or recorded by any means or otherwise subjected to invasions of their privacy in connection with the immersion.

---

[2]   The Later-Filed Action is styled in this Court as 15-cv-00028. On January 22, 2015, the Plaintiff in the Later-Filed Action filed a Motion to Remand Case and/or to Stay Case Except for Discovery Regarding Class Membership.

(the "Proposed Class") (*Id.* ¶ 119.) The Proposed Class is likely to exceed 100 members. (*Id.* ¶ 121.) Finally, Plaintiffs request "compensatory damages against Defendants Kesher Israel, NCM, and the RCA in excess of the jurisdictional minimum in an amount to be proven at trial."[3] (*Id.* at 43.)

### III.   <u>APPLICABLE LEGAL STANDARDS</u>

Removing Defendants removed this action pursuant to CAFA, 28 U.S.C. §§ 1332(d), 1453, 1711. CAFA enlarges this Court's original jurisdiction based on diversity of citizenship to class actions involving more than 100 class members and at least $5 million in controversy. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009). CAFA is designed to provide for "federal court consideration of interstate cases of national importance under diversity jurisdiction." *Id.* (quoting CAFA § 2, Pub. L. 109-2, 119 Stat. 4).

This Court's determination on remand is governed by general principles of federal jurisdiction. First and foremost, "federal courts are courts of limited jurisdiction." *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W.*, 266 F. Supp. 2d 33, 36 (D.D.C. 2005); *see also St. Paul Mercury Indem. Co v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Accordingly, "the law presumes that 'a cause lies outside of the court's limited jurisdiction.'" *Julien v. CCA of Tenn., Inc.*, 268 F. Supp. 2d 19, 21 (D.D.C. 2003) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Because of this limitation on federal courts' jurisdiction, any doubts about whether federal jurisdiction exists must be resolved in favor of remand. *See Harding-Wright v. District of Columbia Water & Sewer Auth.*, 350 F. Supp. 2d 102, 104 (D.D.C. 2005); *see also Johnson-Brown v. 2200 M Street, LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) ("the court must resolve any ambiguities concerning the propriety of removal in favor of remand"). As

---

[3]   The jurisdictional minimum to proceed in the Superior Court of the District of Columbia is $5,000.

a consequence, "if federal jurisdiction is doubtful, a remand to state court is necessary." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004) (*en banc*); *see also Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 297 (D.D.C. 2005).

Additionally, the Supreme Court has recognized that "the presence or absence of federal question jurisdiction is governed by the well pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.,* 522 U.S. 470, 475, (1998). Thus the court must consider the allegations in the complaint as true and draw all reasonable inferences from the allegations in plaintiff's favor.  *Stein v. Am. Exp. Travel Related Servs.*, 813 F. Supp. 2d 69, 71 (D.D.C. 2011).

## IV.   ARGUMENT

### A.  REMAND IS REQUIRED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION

As a basic tenet of federal law, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Federal courts agree that the *burden of proof is on the removing party* to establish federal subject-matter jurisdiction. *See, e.g.*, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction").[4] This includes the burden to show *by a preponderance of the evidence* that the amount in controversy exceeds $5 million. *See, e.g.*, *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006) ("Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy

---

[4]     *See also Romulus v. CVS Pharm., Inc.*, 770 F.3d 67, 80 (1st Cir. 2014); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012); *Federico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57-58 (2d Cir. 2006).

requirement is satisfied[.]").[5] Mere assumptions and estimates are insufficient to meet the preponderance-of-the-evidence burden of proof. *See McMahon*, 2008 WL 183715, at *8. Likewise, the mere "possibility" that damages will exceed the CAFA jurisdictional minimum does not satisfy the burden of proof by a preponderance of the evidence. *See Apodaca v. Allstate Ins. Co.*, 2008 WL 113844 (D. Colo. Jan 8, 2008).

Defendants utterly fail to meet those standards here. As Defendants explicitly acknowledge, the "Amended Complaint does not include a prayer for a specific amount of damages . . . ." (Notice of Removal ¶ 16.) However, the burden is on the removing party to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount in controversy requirement for diversity jurisdiction under CAFA. *McGhee v. Citimortgage, Inc.*, 834 F. Supp. 2d 708, 710-11 (E.D. Mich. 2011); *see also Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121-22 (9th Cir.) ("Where 'it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled,' the 'removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold").

Removing Defendants allege, without factual support, "the aggregate amount in controversy exceeds $5 million." (Notice of Removal ¶ 16.) They surmise that "[w]ith 'upwards of 200' class members, the amount in controversy ***may*** easily exceed $5 million in the aggregate. Indeed, to reach the $5 million mark, the average damages recovery need only be $25,000, which is foreseeable in a case of this sort. There have been recoveries of at least that amount in certain voyeurism cases." (*Id.*(emphasis added).) But mere assumptions and estimates are insufficient to meet the preponderance-of-the-evidence burden of proof. *See McMahon*, 2008 WL 183715, at

---

[5]   *See also McMahon v. Advance Stores Co. Inc.*, 2008 WL 183715, at *7-8 (N.D. W.Va. Jan 18, 2008); *cf. Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 790 (8th Cir 2012).

*8. That is all Removing Defendants can offer, and accordingly the Court must remand this case to the Superior Court of the District of Columbia.

### B. THE COURT SHOULD DECLINE JURISDICTION AND REMAND THE CASE UNDER CAFA'S EXCEPTIONS

Though CAFA enlarges the federal courts' jurisdiction over class actions, it contains multiple express statutory exceptions, three of which do and/or may apply here. Under Section 1332(d)(3), district courts "may, in the interests of justice and looking to the totality of the circumstances, decline to exercise jurisdiction" over an otherwise removable class action if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3) (the "Discretionary Exception"). The Discretionary Exception analysis is primarily driven by six statutory factors courts must weigh to determine whether an action is more appropriately litigated in the forum state as opposed to federal court. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007). District courts have broad discretion in applying the Discretionary Exception. *See id.*

By contrast, Section 1332(d)(4) includes two related exceptions *requiring* district courts to abstain from exercising jurisdiction in class action suits that are largely concentrated in one state. *See* 28 U.S.C. § 1332(d)(4). First, under Section 1332(d)(4)(A), district courts "shall decline to exercise jurisdiction" over otherwise removable class actions when the following four (4) factors are met:

(1) greater than two-thirds of the class is from the forum state;

(2) a significant defendant is from the forum state;

(3) the principal injuries occurred in the forum state; and

(4) there were no other class actions asserting the same or similar factual allegations in the preceding 3-year period.

8

*See* 28 U.S.C. § 1332(d)(4)(A) (the "Local Controversy Exception"). Second, under Section 1332(d)(4)(B), district courts "shall decline to exercise jurisdiction" over otherwise removable class actions in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendant, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (the "Home State Exception").

As discussed below, the Court should remand this case under the Discretionary Exception based on the allegations in the Amended Complaint and the common-sense presumptions that flow therefrom. Further, while Plaintiffs expressly preserve the right to seek remand under CAFA's Home State Exception and/or the Local Controversy Exception, jurisdictional discovery is required to determine whether those exceptions apply.

### 1.   REMAND IS APPROPRIATE UNDER CAFA'S DISCRETIONARY EXCEPTION

Section 1332(d)(3) of CAFA vests district courts with "great latitude" to remand cases otherwise removable under CAFA where, as here, the "interests of justice" dictate that the case is more appropriately litigated in the local forum. *Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc.*, 485 F.3d 804, 810 (5th Cir. 2007). Determining whether CAFA's Discretionary Exception applies is a two-step process.

First, the Court must determine that the action meets Section 1332(d)(3)'s threshold requirement that "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."  18 U.S.C. § 1332(d)(3).  Second, the Court must consider and apply six factors set forth in Section 1332(d)(3).

### a. PLAINTIFFS MEET THE THRESHOLD FOR THE DISCRETIONARY EXCEPTION

The Discretionary Exception has a two-pronged threshold requirement. Courts must find both of the following prior to engaging in any further analysis under the Discretionary Exception: (1) the "primary defendants" are residents of the District of Columbia; and (2) at least one-third of the Proposed Class members are residents of the District of Columbia. Both requirements are easily satisfied on the face of the Amended Complaint.

The "primary defendants" in this action are residents of the District of Columbia. The Notice of Removal was filed by Kesher Israel and NCM, both of whom admit they are "citizens of the District of Columbia." (*See* Notice of Removal ¶ 12 [ECF 7].) The remaining class defendant, RCA (a resident of New York), did not join the Notice of Removal.

Though CAFA does not define "primary defendant," and courts are somewhat divided over the meaning of that term, the majority of courts agree on the basic principles at play. In particular, "there seems to be a settled judicial understanding of 'primary defendants' as those parties having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable." *McClendon v. Challenge Fin. Investors Corp.,* No. 1:08-CV-1189, 2009 WL 589245, *13 (N.D. Ohio Mar. 9, 2009) (discussing "primary defendant" definition based on identical requirement in Section 1332(d)(4)); *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 505–06 (3d Cir. 2013) (same). Courts also look to whether there is "a reasonable basis upon which to differentiate" one defendant from the others in terms of the defendant's role in the alleged wrongdoing and exposure to members of the Proposed Class. *See Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 359 (E.D.N.Y. 2008).

Applying these principles, RCA is not a "primary defendant" for the purposes of Section 1332(d)(3). All the wrongful acts forming the basis for this action were committed by Freundel at the mikvah jointly owned and operated by NCM and Kesher Israel in the District of Columbia (the "NCM/Kesher Israel Mikvah"). (Am. Compl. ¶ 119.) Though the RCA was negligent in placing Freundel in positions of power in the District of Columbia, the overwhelming majority of the Proposed Class members had *no direct conta*ct with the RCA. (*See* Am. Compl. ¶¶ 25, 26.) Moreover, as opposed to Kesher Israel and NCM, the RCA's exposure will be far greater to Proposed Class members who sought to convert with Freundel based on the authority vested in Freundel by RCA.  (*See* Am. Compl. ¶¶ 35, 36, 62-70.) RCA has relatively less exposure to members of the Proposed Class are not Jewish and had little to no interaction with the RCA. (*See id.* ¶¶ 75-85.) Contrastingly, *all* the Proposed Class members interacted with Kesher Israel and NCM by using the NCM/Kesher Israel Mikvah and those Defendants face essentially equal exposure to all Proposed Class members.  Taken together, these factors provide this Court with more than a "reasonable basis upon which to differentiate" the RCA from the primary defendants in this action and Plaintiffs have satisfied the first threshold prong of Section 1332(d)(3). *See Sorrentino*, 588 F. Supp. 2d at 359.

The second prong of the CAFA Discretionary Exception threshold is also satisfied here because the Amended Complaint establishes that at least one-third of the Proposed Class resides in the District of Columbia. When analyzing subject matter jurisdiction, this Court must consider the allegations in the Amended Complaint as true and draw all reasonable inferences therefrom in Plaintiffs' favor. *Stein v. American Exp. Travel Related Servs*., 813 F. Supp. 2d 69, 71 (D.D.C. 2011). Further, courts have recognized that "where a Proposed Class is discrete in nature, a common sense presumption should be utilized in determining whether [the CAFA exception's]

11

citizenship requirements have been met." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 573 (5th Cir. 2011); *see also Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 189 (E.D.N.Y. 2009) (drawing the "eminently reasonable inference that the majority—and certainly one-third—of those buried, or desiring to be buried, in a Queens cemetery are New York residents"); *see also Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 367 (E.D. La. 2007) (inferring that more than two-thirds of proposed class of policyholders in suits arising out of Hurricane Katrina were residents of Louisiana in part based on the fact that the damage was concentrated in Louisiana); *Bennett v. Board of Comm'rs for E. Jefferson Levee Dist.,* No. CIV.A. 07-3130, 2007 WL 2571942, at *4 (E.D. La. Aug. 31, 2007) (same).

The Amended Complaint defines the Proposed Class as all users of the NCM/Kesher Israel Mikvah who were "secretly photographed or recorded by any means *or otherwise subjected to invasions of their privacy in connection with the immersion*."  (Am. Compl. ¶ 119 (emphasis added).)  *Every* woman who used the mikvah was "subjected to invasions" of her privacy by virtue of her uncertainty as to whether she was sexually exploited while engaging in a sacred religious ritual and the Proposed Class therefore includes all women who used the NCM/Kesher Israel Mikvah.  (*See id.*)

By its own admission, the NCM/Kesher Israel Mikvah was used predominantly by married women members of Kesher Israel and other area Orthodox and/or observant communities. Because the mikvah is critical to religious observance for married women, Jewish law requires Orthodox/observant communities to have a mikvah before the community is officially recognized.[6] Not surprisingly therefore, the NCM/Kesher Israel Mikvah caters primarily to married Orthodox/observant women within the District of Columbia. According to NCM's website "www.dcmikvah.com," the mikvah's "primary purpose is to serve the *taharat*

---

[6]   http://www.chabad.org.

*hamishpacha* needs of married women."[7] Also known as "ritual purity," this aspect of Jewish law requires every married Orthodox woman to immerse in the mikvah seven days after the conclusion of her menstrual cycle.[8] Mikvahs tend to be located in close proximity to Orthodox synagogues to cater to their married female members, who must immerse in the mikvah prior to resuming sexual relations with their husbands.[9]

Given the nature of the religious communities to which they belong, the majority of these women are likely D.C. residents. Most members of Orthodox communities live within walking distance of the synagogue. Kesher Israel is a self-described "Modern Orthodox" synagogue located in Georgetown and billing itself as "the only Orthodox synagogue in downtown D.C."[10] As an Orthodox congregation, Kesher Israel caters to Orthodox Jews who live within walking distance of its facility and can therefore attend daily prayers or *minyan*, as well as weekly Friday night and Saturday daytime Shabbat services, to and from which members are required to walk.[11]

Moreover, it is likely that married women in other religious communities in D.C. regularly used the NCM/Kesher Israel Mikvah. Because the NCM/Kesher Israel Mikvah was the only Orthodox mikvah located D.C.  it was also likely used by married female members of other observant communities in D.C. As of the filing of the Amended Complaint, the following Orthodox/observant communities in D.C. lacked a mikvah: American Friends of Chabad Lubavitch; Rosh Pina; D.C. Minyan and Ohev Sholom.[12] Like members of Kesher, these women are Orthodox/observant and are therefore likely to live within walking distance of their places of

---

[7]     https://dcmikvah.wordpress.com/.

[8]     http://www.orthodox-jews.com/family-purity-laws.html.

[9]     *Id.*

[10]    http://www.kesher.org.

[11]    http://www.kesher.org/davening.html.

[12]    According to its website, www.ostt.org, Ohev Sholom opened a mikvah within the last month.

worship and, more likely than not, would have used the closest Orthodox mikvah—the NCM/Kesher Israel Mikvah. Indeed, Orthodox mikvahs are clustered around Orthodox communities throughout the Maryland and Virginia suburbs of the District of Columbia thus underscoring the principle that, like an Orthodox synagogue, an Orthodox mikvah is intended to be located within walking distance of its primary users.[13]

While the Proposed Class includes students from a number area universities and conversion candidates who may or may not have resided in the District of Columbia on the filing date of the Amended Complaint, NCM's self-described mission gives rise to the "common sense presumption" that the Proposed Class will be comprised of at least one-third of D.C. residents and the second prong of the Discretionary Exception's threshold is therefore satisfied. *See Hollinger*, 654 F.3d at 573.

### b. ALL SIX DISCRETIONARY-EXCEPTION FACTORS FAVOR REMAND OF THIS CASE

With that threshold satisfied, the Court must weigh the following six factors set forth in Section 1332(d)(3):

> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

---

[13].   http://images.shulcloud.com/442/uploads/resourceDocs/mikvaot.pdf

Plaintiffs need not establish all these factors and the Court should apply the factors flexibly based upon the "totality of the circumstances." *See Sorrentino,* 588 F. Supp. 2d at 359. Moreover, because the exception is discretionary in nature, courts have far "greater latitude" in determining whether the exception applies. *Preston*, 485 F.3d at 810. As discussed below, applying these factors to the facts of this case strongly favors remand.

### 1. THIS CASE INVOLVES MATTERS OF LOCAL INTEREST

Despite the widespread national media attention this case has received, this is a case of "local interest" that belongs in state court.  As the Fifth Circuit has noted, the fact that the "nation takes interest in [the event giving rise to the action] does not mean that the legal claims at issue in this class action lawsuit qualify as national or interstate interest." *Preston,* 485 F.3d at 822. Rather, "the terms local and national connote whether the interests of justice would be violated by a state court exercising jurisdiction over a large number of out-of-state citizens and applying the laws of other states." *Id.* As with Hurricane Katrina, at issue in *Preston,* this action involves harmful acts that were perpetrated at a single facility located in a single forum that, although newsworthy on a national level, are of interest to that forum.  Accordingly, Section 1332(d)(3)(A) favors remand. *See id.*

### 2. PLAINTIFFS' CLAIMS ARE GOVERNED ENTIRELY BY D.C. LAW

All six Counts alleged in the Amended Complaint assert causes of action under D.C. law and the Amended Complaint raises no issue of federal law. (*See* Am. Compl. ¶¶ 130-206.) Moreover, even if Plaintiffs' claims somehow involved the application of federal statutes or regulations (which they do not), Section 1332(d)(3)(B) still favors remand because issues of D.C. law plainly "predominate" and will "ultimately govern[]" Plaintiffs' claims. *See Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 461 (D.N.J. 2007).

### 3. THE AMENDED COMPLAINT DOES NOT SEEK TO AVOID FEDERAL JURISDICTION

Section 1332(d)(3)(C) is intended to guard against plaintiffs' attempts to avoid federal jurisdiction by pleading in a manner obviously intended to deprive federal courts of jurisdiction. To meet the factor, Defendants must demonstrate that the Amended Complaint is misleading, incomplete or otherwise intentionally aimed at avoiding federal jurisdiction. *See Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 409 (6th Cir. 2008). There is no such evidence here. The Amended Complaint concerns claims of wrongdoing that occurred in the District of Columbia and that were perpetrated primarily by D.C. residents against D.C. residents under D.C. law.

### 4. THIS CASE HAS A DISTINCT D.C. NEXUS

Section 1332(d)(3)(D) is satisfied because the District of Columbia is intimately connected to the class, the injuries sustained, and the primary Defendants. Courts have recognized that a "distinct nexus" is established for CAFA purposes where the injuries giving rise to the class action occurred in the forum state. *See Preston,* 485 F.3d at 822–23*; Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 548 F. Supp. 2d 268, 278 (E.D. La. 2008). Here, all the injuries suffered by the Proposed Class members were inflicted at the NCM/Kesher Israel Mikvah in the District of Columbia. (Am. Compl. ¶ 119.) Accordingly, there can be no credible dispute that the action has a sufficient nexus with the forum to warrant remand under 1332(d)(3)(D).

### 5. THE DISTRICT OF COLUMBIA  HAS THE STRONGEST INTEREST IN LITIGATING THIS CASE

The central inquiry for Section 1332(d)(3)(E) is whether any state other than the forum state has a "greater interest" in litigating the dispute than the forum state. *Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 461 (D.N.J. 2007). In making this determination, courts weigh the relative percentages of potential class members that reside in the forum as compared to other

states.  Here, as discussed *supra* at page 11-13, D.C. has the highest percentage of potential class members and there is no other state or jurisdiction with a higher concentration of potential class members.  Accordingly, the District of Columbia has the greatest interest in litigating this case and Section 1332(d)(3)(E) favors remand.

### 6.  NO PRIOR CLASS ACTIONS WERE FILED

On its face, Section 1332(d)(3)(F) asks whether, in the "3-year period *preceding* the filing of *that* class action[,]" another class action was filed asserting similar claims.  Courts have rejected attempts by defendants to broaden that language to include actions that were subsequently filed.  *Henry v. Warner Music Grp. Corp.,* No. 13 CIV. 5031 PGG, 2014 WL 1224575, at *6 (S.D.N.Y. Mar. 24, 2014).  There is no dispute that no class actions were filed prior to this action and Section 1332(d)(3)(F) favors remand.

### C.  ALTERNATIVELY, THIS COURT SHOULD PERMIT JURISDICTIONAL DISCOVERY ON THE APPLICABILITY OF ALL THREE CAFA EXCEPTIONS

To the extent the Court declines to apply the Discretionary Exception at this stage and/or to otherwise remand the case, Plaintiffs respectfully request that the Court permit jurisdictional discovery on the applicability of all three statutory exceptions in CAFA.

There is no question that the residency of the Proposed Class members is critical to the Court's determination under CAFA.  CAFA's Discretionary, Home State, and Local Controversy Exceptions all turn primarily on the question of what percentage of the Class Members are citizens of the District. The Discretionary Exception requires greater than one-third but less than two-thirds whereas the Home State and Local Controversy exceptions require greater than two-thirds of Proposed Class members to reside in the District of Columbia. 28 U.S.C. § 1332(d)(3) & (4).

Further, courts have consistently recognized the utility of jurisdictional discovery.  "If a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). Courts have held that such jurisdictional discovery is not only appropriate but, sometimes, necessary. *See Anthony v. Small Tube Mfg. Corp.*, 535 F.Supp.2d 506, 512 (E.D. Pa. 2007) ("the court may engage in factual analysis beyond the pleadings in order to determine subject matter jurisdiction . . . when subject matter jurisdiction is called into doubt, jurisdictional discovery should be allowed unless the plaintiff's claim is clearly frivolous") (internal citation omitted); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215-16 (11th Cir. 2007) ("[T]he power to grant discovery generally is conferred to the sound discretion of the district court, and post-removal jurisdiction discovery may appear to present a viable option for a court examining its jurisdiction. Jurisdictional discovery could avoid the problem of speculation by the court."). Indeed, Congress recognized the potential utility of jurisdictional discovery in the context of CAFA's exceptions.  S. Rep. No. 109-14, at 44 (2005) (recognizing "limited discovery may be necessary" for courts to apply the CAFA exceptions).

Plaintiffs propose to seek this limited jurisdictional information from two specific categories of sources: (1) law enforcement; and (2) Defendants Kesher Israel and NCM. *See GTE New Media Servs., Inc.*, 199 F.3d at 1352 (explaining that jurisdictional discovery should be "precisely focused" and "aimed at addressing matters relating to[ ]jurisdiction."). First, as this Court well knows, Freundel's appalling conduct is the subject of ongoing criminal investigation by the United States Attorney's Office for the District of Columbia (the "USAO") and the District of Columbia Metropolitan Police Department (the "MPD"). The USAO has commenced notifying potential victims of whether they were identified among the photographs and videos

18

that law enforcement confiscated from Freundel. The USAO has also seized digital media and records from Freundel's various offices and from his home that presumably relate to Freundel's communication with users of the NCM/Kesher Israel Mikvah and which are likely to shed light on the residency of the Potential Class members. Accordingly, information regarding citizenship of the Class Members is readily available from the USAO and/or the MPD and it would be neither unduly burdensome nor unnecessarily costly for law enforcement to make this information available to Plaintiffs and/or the Court for the sole purpose of determining whether this Court may or must abstain under the CAFA exceptions.[14]

Plaintiffs further propose to propound jurisdictional discovery upon Defendants Kesher Israel and NCM, seeking records limited to those sufficient to identify the citizenship of the women who have used the NCM/Kesher Israel Mikvah since its inception in or around 2005.[15] Aside from law enforcement, these Defendants have exclusive control of records and information concerning the residency of the predominant users of the NCM/Kesher Israel Mikvah.

Moreover, jurisdictional discovery is likely to reveal that the case should be remanded under one or more of the CAFA exceptions. As discussed above, the wrongdoing and injuries at issue here were concentrated in the District of Columbia and, because of that, at least one-third of the Potential Class will likely be D.C. residents.  Accordingly, this Court would be well within

---

[14]   Plaintiffs are cognizant that such a list would contain sensitive identifying information about victims of Freundel's unlawful conduct. At this time, prior to completion of the criminal case, Plaintiffs would not seek the actual list itself or the specifics of its contents, but rather would only request data compiled from the list as it relates to how many victims there are and how many of those victims are citizens of the District of Columbia. Named Plaintiffs would suggest that the Court itself could examine the list *in camera* to safeguard the privacy of the members of the Class.

[15]   Again, Plaintiffs would not seek the sensitive identifying information of those who have used the NCM/Kesher Israel Mikvah. To the extent that Defendants Kesher Israel and NCM are in possession of documents responsive to the jurisdictional-discovery requests, Plaintiffs would advocate that those documents either be produced pursuant to a protective order or redacted so that the only information that could be gleaned from them would be the number of women who used the NCM/Kesher Israel Mikvah and how many of them are citizens of the District.

its discretion to permit jurisdictional discovery. *See Lowery*, 483 F.3d at 1215-16 (explaining that the power to grant discovery is conferred to the sound discretion of the district court). Permitting this jurisdictional discovery to occur now will promote judicial economy and efficiency by allowing the Court to determine at the earliest stage of the litigation whether or not it must abstain from accepting jurisdiction over this case, and therefore is in the best interest of all parties and the Court.

## V.   CONCLUSION

Plaintiffs have established remand is appropriate based on Defendants' failure to meet their burden of establishing subject matter jurisdiction and under CAFA's Discretionary Exception. To the extent the Court declines to remand the case on either of those bases, Plaintiffs respectfully request that the Court grant it the ability to conduct limited jurisdictional discovery. Based on the nature of the claims presented here, there is a strong likelihood that the case will ultimately be remanded and jurisdictional discovery at this stage of the proceedings is therefore appropriate.  Accordingly, Plaintiffs respectfully request that this Honorable Court remand this case to the D.C. Superior Court.  Alternatively, Plaintiffs respectfully request that the Court permit them to engage in limited jurisdictional discovery.  A proposed order is attached.

## VI.   LOCAL RULE 7(M) CERTIFICATION

Pursuant to Local Rule 7(m), the undersigned conferred with counsel for the Removing Defendants prior to filing this Motion and the Removing Defendants oppose the Motion.

Dated: February 9, 2015                          Respectfully submitted,


                                                 /s/ *Steven J. Kelly*
                                                 Steven J. Kelly (D.C. Bar No. 1021534)
                                                 SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC
                                                 201 N. Charles Street, Suite 2600
                                                 Baltimore, Maryland 21201
                                                 Tel:    410.385.2225
                                                 Fax:    410.547.2432
                                                 skelly@mdattorney.com

                                                 *Counsel for Plaintiffs Jane Doe, Emma*
                                                 *Shulevitz, and Stephanie Smith*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

JANE DOE, *et al.*

               *Plaintiffs*,

v.

THE GEORGETOWN UNIVERSITY, *et al.*,

               *Defendants*.

</td><td>

Civil Action No. 1:15-cv-00026-CRC

</td></tr>
</table>

# O R D E R

UPON CONSIDERATION OF the Plaintiffs' Motion for Remand or, in the Alternative, for Limited Jurisdictional Discovery (the "Motion") filed in the above-referenced action, and any response thereto, it is this ____ day of _____, 2015, hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that this case be and is hereby REMANDED to the Superior Court of the District of Columbia; and it is further

ORDERED that _____

_____.

_____
The Hon. Christopher R. Cooper
United States District Judge
U.S. District Court for the District of Columbia

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2015, a true and correct copy of the foregoing Plaintiffs' Motion for Remand or, in the Alternative, for Limited Jurisdictional Discovery, including all attachments thereto, was served *via* the Court's electronic filing system on:

William D. Nussbaum, Esq.
Saul Ewing, LLP
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, D.C. 20006-3434

*Attorneys for Defendant The Georgetown University*


Edward C. Bacon, Esq.
Patricia M. Thornton, Esq.
Bacon, Thornton & Palmer, L.L.P.
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770

*Attorneys for Defendant The National Capital Mikvah, Inc.*

Paul Blankenstein, Esq.
Maura Logan, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

*Attorneys for Defendant The Georgetown Synagogue—Kesher Israel Congregation*


Mark D. Harris, Esq.
Guy Brenner, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036

*Attorneys for Defendant Histadruth Horabonim Deamerica—Rabbinical Council of America, Inc.*


_____/s/_____
Steven J. Kelly