**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JANE DOE, EMMA SHULEVITZ, and STEPHANIE SMITH,<br><br>        *Plaintiffs*,<br><br>v.<br><br>THE GEORGETOWN SYNAGOGUE – KESHER ISRAEL CONGREGATION, et al.<br><br>        *Defendants*. | Case No. 1:15-cv-00026 |
| JANE DOE 2, AND ALL OTHER CLASS MEMBERS AS DEFINED HEREIN,<br><br>        *Plaintiffs*,<br><br>v.<br><br>THE GEORGETOWN SYNAGOGUE – KESHER ISRAEL CONGREGATION, et al.<br><br>        *Defendants*. | Case No. 1:15-cv-00028 |

**MEMORANDUM OF POINTS AND AUTHORITIES OF ALL DEFENDANTS
IN OPPOSITION TO PLAINTIFFS' MOST RECENT MOTIONS FOR REMAND
(1:15-cv-26, Dkt. 40; 1:15-cv-28, Dkt. 39)**

Defendants the Georgetown Synagogue – Kesher Israel Congregation ("Kesher"), the

National Capital Mikvah ("Mikvah"), and the Rabbinical Council of America ("RCA")

(collectively "Defendants") hereby respond to the Doe 1 Plaintiffs' and the Doe 2 Plaintiffs'

renewed motions for remand (Case No. 1:15-cv-26 ("Doe 1"), Dkt. 40; Case No. 1:15-cv-28

("Doe 2"), Dkt. 39).  The Defendants also hereby incorporate by reference their oppositions to

the initial motions for remand by the Plaintiffs (Doe 1, Dkt. 29; Doe 2, Dkt. 15).

## INTRODUCTION

The Doe 1 plaintiffs state that "the *sole* issue before the Court on its Renewed Motion is whether *Plaintiffs* can demonstrate that at least one third of the members of the proposed class resided within the District of Columbia as of the filing of the Complaint."  Doe 1, Dkt. 40 at 1 (second emphasis added).  More precisely, the issue is whether more than one-third of the classes proposed by the Doe 1 and Doe 2 plaintiffs, respectively, were citizens of the District of Columbia ("D.C.") in December 2014.  The same is certainly true for the Doe 2 plaintiffs as well.  But both the Doe 1 plaintiffs and the Doe 2 plaintiffs (collectively, "Plaintiffs") have failed to meet their burden to make that showing.

These putative class-action cases, initially filed with the Superior Court of the District of Columbia, involve the criminal voyeurism of Rabbi Bernard Freundel ("Freundel"), who placed recording devices in the changing areas of the Mikvah.  Defendants subsequently removed the cases to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

Plaintiffs Doe 1 and Doe 2 filed separate motions to remand the cases to the D.C. Superior Court based on one or more of the CAFA exceptions.  Although the respective class definitions were materially different,[1] both motions asserted that a remand was in this Court's discretionary authority or was mandatory because more than one-third or perhaps even two-thirds of the respective classes were citizens of the District of Columbia.  Doe 1, Dkt. 21; Doe 2,

---

[1]  The Doe 1 plaintiffs defined the class as "all women who participated in an immersion ritual at the [Mikvah] . . . where Freundel initiated, arranged, participated in or was involved in the immersion," and "who through cameras, surveillance equipment, recording devices or other surreptious means positioned or contrived by Freundel individually or at his request or directions, were involuntarily and secretly photographed or recorded by any means or otherwise subjected to invasions of their privacy in connection with the immersion."  Doe 1 Am. Compl. at ¶ 119.

The Doe 2 plaintiffs defined the class as "Any and all women who used any portion of the mikvah . . . at any time since 2005 to the present, including but not limited to women who used any portion of the mikvah either because Rabbi Freundel arranged their attendance at the mivkah and/or Rabbi Freundel solicited, initiated, and/or participated in any way in their use of the mikvah."  Doe 2 Compl. at ¶ 25.

Dkt. 12.  The organizing presumptions of both motions were:  (1) that married women of Kesher were the predominant members of the class, as they were the predominant users of the Mikvah, and (2) that since the tenets of Orthodox Judaism prohibit driving on the Sabbath, members of Kesher must live within walking distance of the synagogue, which is located in the Georgetown neighborhood of D.C., and thus were D.C. citizens.  Doe 1, Dkt. 21 at 13; Doe 2, Dkt. 12 at 7.

The Court determined, however, that neither the Doe 1 nor the Doe 2 plaintiffs had met their burden to establish that any of the CAFA exceptions applied, but permitted Plaintiffs to take limited discovery of Kesher and the U.S. Attorney's Office.  Specifically, the Court directed that Plaintiffs could seek information from Kesher regarding the state of residence of its married female members and the ages of those women.  Both Kesher and the U.S. Attorney's Office responded to the joint discovery propounded by Plaintiffs.

Both sets of plaintiffs have now "renewed" (Doe 1), or "supplemented" (Doe 2) their earlier respective remand motions.  Both sets of plaintiffs simply declare, without any real explanation, that the information produced by Kesher "confirm[s]" (Doe 2, Dkt. 39 at 1) or "plainly demonstrates" (Doe 1, Dkt. 40 at 1) that more than one-third of the members of their respective proposed classes were citizens of D.C. in December 2014, when their respective complaints were filed.

The supplemented and renewed motions fall far short of the mark, however.  Although Plaintiffs have abandoned the notion that members of the Kesher community must all live within walking distance of the synagogue, they persist in the unsupported and unsupportable proposition that certain former female members of Kesher still reside in D.C. because Kesher records show D.C. as their last-known address, even though those former members may have left Kesher years ago.  Perhaps more importantly, the respective calculations of both the Doe 1 and

3

Doe 2 plaintiffs ignore or give little weight to putative class members other than Kesher women, such as converts, students from Towson or Georgetown universities, visitors to D.C. who used the Mikvah, as well as women from suburban areas of Maryland and Virginia.  Indeed, Plaintiffs summarily dismiss the concrete evidence provided by the U.S. Attorney's Office that only three of the twenty-four women who were recorded by Freundel for whom the U.S. Attorney's Office has residence information resided in D.C.  *See* Declaration of Gunella Lilly at ¶ 3 (Doe 1, Dkt. 40-2 at 3–4; Doe 2, Dkt. 39 at 94–95).

Perhaps recognizing that their "renewed" or "supplemented" remand motions fail to establish that more than one-third of the respective class were citizens of D.C. in December 2014 when the complaints in these cases were filed, Plaintiffs seek, in the alternate, yet further discovery, either again from the U.S. Attorney's Office and Kesher (Doe 1, Dkt. 40 at 6–7), or from Rabbi Freundel (Doe 2, Dkt. 39 at 5).  But further discovery is plainly not warranted.

For these and the reasons discussed in more detail below, Plaintiffs' motions must be denied.[2]

## ARGUMENT

As the parties seeking remand, Plaintiffs bear the burden of proving that a CAFA exception applies.  *See, e.g.*, *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014); *Greenwich Fin-Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp*, 603 F.3d 23, 26

---

[2] Even if the respective plaintiffs could demonstrate that more than one-third of the proposed class members were D.C. citizens when their respective complaints were filed, the interest-of-justice factors set out in 28 U.S.C. § 1332(d)(3) militate against a remand.  Doe 1, Dkt. 29 at 26–28; Doe 2, Dkt. 15 at 17–19.  For example, contrary to what the Doe 1 plaintiffs suggest, this is not a local controversy.  While the recording was done at the Mikvah in D.C., the consequences reach far beyond the borders of D.C.  In fact, six of the twenty-four of Freundel's victims from whom the U.S. Attorney's Office has residence information reside in Israel while another resides in Honduras.  Doe 1, Dkt. 40-2 at ¶ 3.  And Freundel's converts resided in eleven different states, as well as in Israel.  Doe 2, Dkt. 15-4 at 2.  Maryland was also the residence of thirty-one converts at the time they were converted while only twenty-two were D.C. residents.  *Id.*  Maryland is also where Towson University is located.  Plaintiff Smith is a student at Towson as were other victims of Freundel.  Doe 1 Am. Compl. at ¶¶ 7, 202.

(2d Cir. 2010).  Both the Doe 1 and Doe 2 plaintiffs maintain that a remand is appropriate under the so-called "interest of justice" exception to CAFA jurisdiction.  28 U.S.C. § 1332(d)(3).  To invoke that exception, the party seeking remand must, as a threshold matter, establish that more than one-third of the class members were citizens of the forum state when the case was initiated. *Id.*  And any doubt as to whether a CAFA exception applies is to be resolved against the party seeking remand.  *Hood v. Gilster-Mary-Lee Corp.* No. 15-1458, 2015 WL 1951924, at *2 (8th Cir. May 1, 2015); *Jeter v. Wild W. Gas, LLC,* No. 12-0411, 2014 WL 3890308, at *9 (N.D. Okla. Aug. 7, 2014).

In order to determine the percentage of D.C. citizens that are in each of the proposed classes, each plaintiff must provide evidence about the size of the proposed class and the number of D.C. citizens in the class.  Dividing the number of D.C. citizens (the numerator) by the number of all class members (the denominator) will produce the percentage of putative class members who are D.C. citizens.  Even with the benefit of discovery from Kesher and information provided by the RCA and the U.S. Attorney's Office, the Doe 1 plaintiffs have not provided the Court with evidence that would allow it to fill in the number for the numerator, while the Doe 2 plaintiffs have failed to provide the Court with evidence sufficient to allow the Court to fill in the numbers for either the numerator or denominator.

**PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN UNDER CAFA TO SHOW THAT MORE THAN ONE THIRD OF PUTATIVE CLASS MEMBERS RESIDE IN D.C., AND ADDITIONAL JURISDICTIONAL DISCOVERY IS UNWARRANTED.**

I.      **Jane Doe 1.**

   a.   ***The Jane Doe 1 Plaintiffs Have Not Established the One-Third Class Member CAFA Exception Threshold***

In their renewed remand motion, the Doe 1 plaintiffs base their conclusory assertion that more than one-third of the class members were citizens of D.C. at the time the complaint was

filed based on the proposed class consisting "of all married and single members of Kesher."
Doe 1, Dkt. 40 at 5.  They cite their reply brief in support of their initial remand motion for that
class definition.  *Id.*  However, even the class as defined in the Doe 1 plaintiffs' amended
complaint is a far more limited class.  Rather than "all married and single women of Kesher,"
whether or not they were recorded by Freundel, the amended complaint describes the class as
"all women who participated in the immersion ritual" at the Mikvah, "where Freundel initiated,
arranged, participated or was otherwise involved in the immersion," and who were "involuntarily
and secretly photographed or recorded by any means or otherwise subjected to invasions of their
privacy."  Doe 1 Am. Compl. at ¶ 119.  Indeed, at the March 31, 2015 hearing on the motions to
remand, counsel admitted that the class for the Doe 1 plaintiffs would only include those women
who were videotaped or otherwise recorded by Freundel.[3]  The U.S. Attorney's Office reported
that number to be 152, which counsel acknowledged was the size of the Jane Doe 1 plaintiffs'
class.[4]  *See* note 3 *supra.*

Given that the evidence of record is that (1) the recording equipment was not a constant
presence at the Mikvah, but that Freundel periodically installed and removed the recording
device[5] and (2) that Freundel did not  arrange, initiate, participate in, or was otherwise involved

---

[3]  *See* H'g Tr. at 18:8–18 (Mar. 31, 2015) ("THE COURT: . . . As I understand it, there were perhaps 150 women
who were filmed, based on the statements by the U.S. Attorney's Office, and your class would include only
those women; whereas the other class would include anyone who participated in the mikvah ceremony since
Freundel supervised it.; MR. GRYGIEL: Yes, Your Honor.; THE COURT: Is that correct?; MR. GRYGIEL:
Yes." ); *Id.* at 26–28 (Mr. Camarata, explaining that class members who had not been filmed but had used the
Mikvah were members of the Doe 2 class because they suffered a cognizable injury, noted that all class
members may have thought "'I used the mikvah, too.  I have a fear that I may have been a victim of his illicit
illegal taping during my use of the mikvah.' So there lies the breach.").

[4]  Moreover, if, as the Doe 1 plaintiffs now maintain, the proposed class consists of all married and single
members of Kesher since 2005, then none of the named plaintiffs could be a representative of that class as not
one of the Doe 1 plaintiffs alleges that she is now a member of Kesher or was a member in the past.  To qualify
as a class representative, the plaintiffs must be members of the class.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.
2541, 2550 (2011).

[5]  *See Factual Proffer in Support of Guilty Plea*, Doe 1, Dkt. 29-1.  In addition, the United States Memorandum in
Aid of Sentencing in connection with the criminal actions against Rabbi Freundel, the U.S. Attorney's Office

in the use by female members of Kesher of the Mikvah, and had no means to know when those women used the Mikvah,[6] the Doe 1 plaintiffs cannot, as they unsuccessfully attempt to do, establish the one-third CAFA exception threshold based upon a class consisting of "all married and single [women] members of Kesher."  Doe 1, Dkt. 40 at 5.

The Doe 1 proposed class, as defined in the amended complaint and reaffirmed at the March 31 hearing, consists only of those women Freundel recorded:  converts, students from Towson University and Georgetown University, and perhaps some single women.  Of the 96 female converts about whom the RCA had residence information, only twenty-two were residents of D.C. at the time they converted.  Discovery from the U.S. Attorney's Office shows that of the twenty-four women for whom they have residence information, only three—or 12.5%—were D.C. residents.  Assuming no overlap with the converts who were D.C. residents, that arguably brings the number of D.C. citizens to 25 out of 152, or 16.4%, less than one-half the one-third threshold.  Adding the two single women affiliated with Kesher that Jane Doe 3 identifies in her declaration accompanying the Doe 1 plaintiffs' reply brief, Dkt. 30-1 at ¶ 7, and again assuming those single women are D.C. citizens, brings the number to 27 out of 152, or 17.7%, still far short of the necessary one-third.  And, other than to dismiss it as inadequate, the Doe 1 plaintiffs cannot refute that the information provided by the U.S. Attorney's Office, especially when coupled with the information about the residence of converts provided by the RCA, suggests that well less than one-third of the Doe 2 proposed class were D.C. citizens in December 2014.

---

reports that:  "It is believed that the defendant brought the recording devices on each occasion that he recorded subjects, and removed the devices after he finished recording that day.  *See* Exhibit A at 5.

[6]  Declaration of Adela Renna (Doe 1, Dkt. 29-4; Doe 2, Dkt. 15-3), at ¶ 15.

The Doe 1 plaintiffs have also completely ignored the Towson University students and those of Georgetown University who are part of their putative class even though a Towson student is a named plaintiff, and even though their complaint alleges that "Freundel brought so many young women through the [Mikvah] that "Freundel treated the Mikvah like a car wash. Every Sunday, six students at a time." Doe 1 Am. Compl. at ¶ 98 (f). The Doe 1 plaintiffs' failure to mention the Towson and Georgetown students is not surprising. While adding those students would increase the denominator of the fraction that would produce the percentage to be established, it would likely not provide any corresponding increase to the numerator. As pointed out *infra* at footnotes 9 and 10, publicly available information indicates that both Georgetown and Towson students are not likely to be D.C. citizens. *See also* Dkt. 29 at 19 n. 16.

Moreover, the calculations offered by the Doe 1 plaintiffs are entirely unreliable. They correctly report that, based upon the discovery provided by Kesher, there "are 294 unique female members" for the 2005–2015 period. However, when they break down those female members into those who were residents when the complaint was filed and those who were not, their figures add up to 299. *See* Doe 1, Dkt. 40 at 2–3. Further undermining the Doe 1 assertion that the one-third threshold is plainly demonstrated by the discovery from Kesher (*id.* at 2) is the fact the Doe 1 and Doe 2 plaintiffs reach different conclusions as to the number of Kesher current and former members who were D.C. citizens in December 2014. The Doe 1 plaintiffs put the number at 165. *Id.* at 2–3. Plaintiff Doe 2, on the other hand, maintains that there are only 124 members of Kesher who were D.C. citizens in December 2014. Doe 2, Dkt. 39 at 3. And both totals are based on the last known addresses of Kesher members.

But in any event, basing D.C. citizenship on the "last known address" of Kesher members is a particularly doubtful enterprise, especially when some former members left Kesher years

ago.  *See Nichols v. Progressive Direct Ins. Co.*, No. CIV.A.06 146 DLB, 2007 WL 1035014, at

*3 (E.D. Ky. Mar. 31, 2007) ("Plaintiffs . . . propose a class period of approximately five years.

To conclude that over this period at least two-thirds of these persons remained citizens of the

state would be sheer speculation at this stage.").  As the Ninth Circuit observed in *Mondragon v.*

*Capital One Auto Finance*, "the proposed class reaches back to cover purchases made as long as

four years before the filing of the complaint . . . and we imagine that at least some [class

members] who were California citizens at the time of purchase subsequently moved to other

states." 736 F.3d 880, 884 (9th Cir. 2013).  Indeed, this Court has questioned whether it is

reasonable to assume that class members who resided in D.C. ten years ago still reside in D.C.

H'g Tr. at 7 (April 6, 2015) ("Isn't it more likely that a 2005 member would no longer be a

resident of D.C.?").  And a review of the data produced by Kesher shows that the yearly

departure rate for Kesher married women fluctuated between 7% and 17% in any given year

between 2005 and 2015.

In *Hart v. Rick's NY Cabaret International, Inc.*, the court refused to remand a case

because the records—the last known addresses of members of the proposed class—were

inconclusive regarding the plaintiffs' citizenship.  967 F. Supp. 2d 955, 963-64 (S.D.N.Y. 2014).

The court rejected the remand motion although more than two-thirds of the class members' last-

known addresses were in New York as the records "provide[d] only limited insight into whether

[the plaintiffs] intended to make [the forum state their] permanent home," and "d[id] not speak to

the [class members'] citizenship as of the critical dates."  *Id.*; *see also Schwartz v. Comcast*

*Corp.*, No. CIV.A. 05-2340, 2006 WL 487915, at *1, *6 (E.D. Pa. Feb. 28, 2006) (denying a

renewed motion to remand after limited class discovery—because upon reviewing the

evidence—the court was "unable to determine the domicile of plaintiff's residential class members").

Plaintiffs further assume that all Kesher members with addresses in D.C. intended to make D.C. their permanent home.  Many courts have rejected similar assumptions, finding that parties seeking remand must show *citizenship*, not just residence.  *See, e.g.*, *Mondragon*, 736 F.3d at 884 ("That a [class member] may have a residential address in California does not mean that person is a citizen of California."); *Lancaster v. Daymar Colls. Grp., LLC.*, No. 3:11-cv-157, 2012 WL 524459, at *4 (W.D. Ky. Feb. 15, 2012) (finding residence insufficient to establish citizenship), *Wiggins v. Daymar Colls. Grp., LLC.*, No. 5:11-cv-36, 2012 WL 525449, at *7–8 (W.D. Ky. Feb. 15, 2012) (same); *McMorris v. TJX Cos.*, 493 F. Supp. 2d 158, 162–63 (D. Mass 2007) (same).  Plaintiffs' assumption that residence equals citizenship is equally unreasonable in the District of Columbia, a city in which many young adults and federal employees reside for a limited time, fully intending to leave the city after a set period.[7]

Finally, the Doe 1 plaintiffs never set out the calculations that demonstrate that the one-third CAFA exception threshold is satisfied even if the class includes all female members of Kesher.  All that they say in that regard is that discovery from Kesher "indicates that the *overwhelming majority*—65% of the 123 female members of Kesher whose residence could be determined resided in D.C. as of the filing of the complaint."  Doe 1, Dkt. 40 at 5 (emphasis in original).  The Doe 1 plaintiffs' failure to explain how they arrived at the 123 number further compromises the reliability of their calculations especially as they had earlier asserted that the

---

[7]  RealEstate Business Intelligence, LLC, Modern Migrants, The Region's 21st Century Movers 2 (Dec. 7, 2012), *available at* http://www.rbintel.com/sites/default/files/Modern%20Migrants%20-%20Region%27s%2021st%20Century%20Movers.pdf  ("[T]here is more residential turnover in . . . the Washington DC metro area, than in many other parts of the country.  The one-year residential mobility rate in the Washington DC metro area was 14.2 percent over the 2008–2010 period, a full two percentage points higher than the national rate over the same period.  A robust economy that attracts young workers to the city and to the inner suburbs leads to a very mobile population.")

number of former and current Kesher members who were D.C. citizens in December 2014 was 165.  The Doe 1 plaintiffs lost 42 alleged citizens of D.C. in the space of just two pages (165 based on their calculations on pages 2 and 3, and 123 on page 5).

In any event, 65% of the 123 female Kesher members would yield 80 female members of Kesher who were purportedly residents of D.C. when the complaint was filed, which would be only 27% of a Kesher female-member-only class.

In short, the Doe 1 plaintiffs have totally failed to establish that the D.C. citizens constitute more than one-third of their class as described in the Amended Complaint and later confirmed to the Court at the March 31 hearing.  They also fail to do so for the class consisting of married and single Kesher female members.

### b.   *Further Discovery is not warranted.*

The Doe 1 plaintiffs want additional discovery if "the Court finds that the evidence . . .is insufficient to establish the threshold for CAFA's Discretionary Exception."  Doe 1, Dkt. 40 at 6. Although Defendants agree that the evidence the Doe 1 plaintiffs have offered is plainly insufficient, they have made no case for further discovery from the U.S. Attorney's Office, and certainly not from Kesher.

The Doe 1 plaintiffs complain that Kesher did not produce any substantiating documents that would enable Plaintiffs to verify the accuracy and completeness of the information provided, and that they "should not be forced to take Kesher's word for it . . ."  Doe 1, Dkt. 40 at 7.  But given that the class defined in the Doe 1 plaintiffs' amended complaint and as reaffirmed by counsel in open court does not include female Kesher members, further discovery from Kesher regarding the residence of its female members in December 2014 when the original complaint was filed would serve no purpose.

11

In any event, the additional discovery sought by the Doe 1 plaintiffs is plainly

unwarranted.  Under CAFA, "jurisdictional discovery should be made largely on the basis of

readily available information."  Judiciary Report on Class Action Fairness Act, S. Rep. No. 109-

14 at 44 (2005); *Jeter*, 2014 WL 3890308, at *5 ("[E]xceptions [to CAFA] should ordinarily be

shown by 'readily available information' rather than after 'burdensome discovery.'").  "Allowing

substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of"

CAFA, which is to "encourage the exercise of federal jurisdiction over class actions."  S. Rep.

No. 109-14, at 44.  Recognizing that they "should not be conducting mini-trials to determine

individual class members' citizenship," courts are therefore exceedingly careful not to allow

burdensome discovery before class certification.  *Schwartz*, 2006 WL 487915, at *4.  Courts

generally allow only "precisely focused" discovery that is "sufficiently tailored" to lead to

information concerning the jurisdictional issue."  *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d

982, 985, 987 (S.D. Cal. 2005) (internal quotation marks omitted) (denying plaintiff's requests

for a "class survey and for the last known address and telephone number of all members of the

proposed class").  In setting the scope of discovery here, this Court recognized that jurisdictional

discovery is limited.  *See* H'g Tr. at 10:10-11 (April 6, 2015) ("I'm not envisioning any

independent research here. . . . [I]f there are current and historical membership lists available,

that's relevant to our inquiry, I'm not asking you to call people or go out and, you know, put

together records from multiple sources in order to, you know, create this information in the first

instance.")

Kesher has more than met the Court's direction to provide membership lists.  As

explained in its Objections, the chart it produced to both sets of plaintiffs contains the

membership information from its electronic databases, redacted to remove identifying details.

Doe 1, Dkt. 38.  It is the most up-to-date and comprehensive of its membership records.  As

noted in the Objections, membership directories and membership application forms contained

stale residence information, and it would be unduly burdensome to require Kesher to undertake

the task to redact those materials from which the Doe 1 plaintiffs would glean little, if any,

relevant information.  *Id.* at 10.  As to the application forms, Kesher accessed those materials to

provide year of birth information, where available, in keeping with the Court's order allowing

limited jurisdictional discovery.  But the Doe 1 plaintiffs have made no use of that information in

their renewed motion.

The Doe 1 plaintiffs maintain that they don't have to take Kesher's "word for it."  But

they have brought nothing to the Court's attention that would cast any doubt on the accuracy or

completeness of the discovery provided.

As for further discovery from the U.S. Attorney's Office, the Doe 1 plaintiffs want to task

the office with "reach[ing] out to identified victims to determine residency [*sic*] at the time of

filing."  Doe 1, Dkt. 40 at 7.  But government agencies are to do the public's business, not to act

as agents of private parties to assist in private litigation.  The Doe 1 plaintiffs cannot employ the

U.S. Attorney's Office as their private investigator.

## II.     **Plaintiff Jane Doe 2**

### a.     *The Doe 2 Plaintiffs Have Not Established the CAFA One-Third Class Member Threshold*

Like the Doe 1 plaintiffs, the Doe 2 plaintiffs claim that the discovery from Kesher

plainly demonstrates that at least one-third of the class were D.C. residents at the time their case

was filed.  Doe 2, Dkt. 39 at 2.  Unlike the Doe 1 class, the Doe 2 class includes "any and all

women" who used the Mikvah, without regard to whether that use was arranged by Rabbi

Freundel and without regard to whether that woman was recorded by Freundel.  Doe 2 Compl. at

13

¶ 25.   The class would thus include Kesher members who used the Mikvah but were not recorded by Freundel.

Plaintiff Doe 2, however, faces an insurmountable hurdle in having that wide-ranging class certified:  she lacks standing to sue on behalf of those putative class members who were not recorded by Freundel.  To have standing to sue on a class's behalf, a plaintiff must be an adequate class representative, that is, she must be a part of the class and "possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted).  As the Supreme Court stated in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982), in order to represent a class, the plaintiff must show "the existence of a class of persons who have suffered the same injury as [the named representative], such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims."  Further, for a class to be certified, "the named plaintiffs' claims and the class claims [must be] so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Brown v. Kerkhoff*, 279 F.R.D. 479, 493 (S.D. Iowa 2012) (alterations and internal quotation marks omitted).  Also, there can be "no conflict or substantial diversity of interest between the representatives and the absentees." *Kinsey v. Legg, Mason & Co.*, 60 F.R.D. 91, 99 (D.D.C. 1973), *rev'd on other grounds sub nom. Kinsey v. First Reg'l Sec. Inc.*, 557 F.2d 830 (D.C. Cir. 1977).

Plaintiff Doe 2 was a Freundel convert and, as such, was allegedly recorded by Freundel. Consequently, the injury that she suffered was entirely different from the sort of any alleged injury that Mikvah users who were not recorded by Freundel might have sustained.  If, in fact, recorded by Freundel, plaintiff Doe 2 was subjected to a direct invasion of her privacy.  Mikvah

users who were not recorded did not have their privacy invaded; indeed, it is not clear that they have sustained any legally cognizable injury.  And the nature of, and extent of damages that plaintiff Doe 2 will attempt to prove will be far different from the alleged damages by women who used the Mikvah but were not recorded.

Moreover, to the extent that current or even former female members of Kesher are included in the putative class, those class members may have adverse interests to plaintiff Doe 2. A female member of Kesher may have strong ties to the congregation and may not want to be part of a class seeking substantial damages from the synagogue.

If, as defendants submit, plaintiff Doe 2 can only represent a class of women who were recorded by Freundel, that class would consist of converts, students and perhaps single women. That class would be identical to the class as defined by the Doe 1 plaintiffs, and plaintiff Doe 2 would be unable to establish that more than one-third of the class members were D.C. citizens for the same reason that the Doe 1 plaintiffs failed that test.

But apart from that standing defect, the Doe 2 plaintiffs have also fallen short of showing that one-third of even the broader class they seek to represent were citizens of D.C. in December 2014, when the complaint was filed.  That broader class would include any woman—converts, married and perhaps single Kesher members, women from the D.C. suburbs, students from Georgetown and Towson Universities, and visitors to D.C.—who used the Mikvah from 2005 to 2015.  The problem the Doe 2 plaintiffs have in that regard is with the number to be placed in the denominator of the equation for calculating the percentage of class members who were D.C. citizens because that number is simply unknown.  And the Doe 2 plaintiffs make only a feeble effort to address the issue.

The Doe 2 plaintiffs point out that discovery from Kesher shows that there were 294 female members of Kesher during the class period, and that, based on the last address in Kesher's record, 124 were D.C. residents when the complaint was filed, making D.C. residents 42.2% of the class, over the one-third CAFA exception threshold.[8]  Recognizing that the putative class includes converts, Doe 2 cites the RCA information that 22 of the 96 females converted by Freundel during the class period were D.C. residents.  That increases the numerator to 146 purported D.C. residents and the denominator to 390 class members, which according to the Doe 1 plaintiffs produces a percentage of 37%.

But the putative wide-ranging class also includes students from Towson and Georgetown, as well as women from the suburbs of D.C., perhaps some single women and visitors to D.C. who used the Mikvah during the ten-year class period.  The number of those women is unknown making the number of women in the denominator equally unknown, thus rendering a percentage of class members who were D.C. citizens impossible to calculate.

The Doe 2 plaintiffs try—unsuccessfully—to address that problem by a series of speculative assumptions.  First, with regard to students, the Doe 2 plaintiffs say that it is reasonable to conclude that this group is "extremely smaller" than the other two.  Dkt. 39 at 4.  But they offer nothing to support that speculation.  On the other hand, the Doe 1 plaintiffs allege that "Freundel brought so many young women through the [Mikvah]" that he "treated that mikvah like a car wash.  Every Sunday, six students at a time."  Doe 1, Am. Compl. at ¶ 98(f).  In this very regard, the Sentencing Memorandum points out "the fact that [Freundel] sometimes captured women on the same dates as each other only shows that he sometimes herded groups of women—such as his students—into the shower room to be recorded one after the other, to

---

[8]   The use of last known addresses of Kesher members as a proxy for citizenship fails for plaintiff Doe 2 for the same reasons it is insufficient for Doe 1 plaintiffs.  *See supra* at 8-9.

maximize the efficiency of his surreptitious conduct." *See* United States' Memorandum in Aid of Sentencing, *United States v. Freundel*, No. 2014-CMD-18262 (D.C. Sup. Ct. May 8, 2015), attached hereto as Exhibit A at 23.

And publicly available information shows that less than 1% of Georgetown University students are D.C. citizens,[9] and that 84% of Towson University students are citizens of Maryland.[10]  Thus, having a large cohort of Towson and Georgetown students in the class would plainly add to the denominator without increasing the numerator, thereby lowering the percentage of D.C. citizens in the putative class.

Second, also without any evidence, the Doe 2 plaintiffs assert that "[p]resumably" the overall rate of D.C. citizens of local women who used the Mikvah is the same as Kesher's purported rate of 42.2%.  It is equally presumable that it was much lower.

Doe 2 simply ignores entirely that visitors to D.C. also used the Mikvah.  Those visitors by definition cannot be D.C. citizens.  Adding visitors to the denominator would necessarily lower the percentage of D.C. citizens who may be class members.

Indeed, if the number of visitors to D.C. who used the Mikvah only averaged three per year and if the number of students that Freundel lured to the Mikvah also averaged three per year during the ten-year class period,[11] the denominator would increase from 390 that the Doe 2 plaintiff calculated (Doe 2, Dkt. 39 at 4) to 450.  As a result, the percentage of class members who were D.C. citizens in December 2014, when the complaint was filed, would drop to under the one-third threshold (32.4%).

---

[9]   http://uadmissions.georgetown.edu/firstyear/studentprofile#Entering Class.

[10]   http://www.collegexpress.com/lists/list/percentage-of-out-of-state-students-at-public-universities/360/.

[11]   Millions of visitors travel to D.C. each year.  http://wamu.org/news/12/05/of record_number_of_tourists_visited_dc_in_2012.

The point is not that those are the more likely numbers for students and visitors, but that the number of students and visitors who immersed in the Mikvah during the class period is unknown, and the Doe 2 plaintiffs have not even attempted to provide the Court with some reasonable evidence-based estimate of their numbers in the proposed class, let alone the citizenship of those students and visitors.  And the failure of the Doe 2 plaintiffs to satisfy their burden in that regard is not attributable to any failure of Kesher to provide information in discovery.  Kesher has absolutely no knowledge of Mikvah use by students or visitors to D.C. (as, indeed, Kesher has no knowledge of individual Mikvah use by its own female members).

### b.    *A Deposition of Freundel would not be productive.*

Although maintaining that they have met their burden to establish the one-third threshold necessary to allow this Court discretion to even consider a CAFA exception, the Doe 2 plaintiffs propose that, if the Court disagrees, they should be allowed to depose Freundel.  Again, they venture into the area of speculative assumptions, claiming that Freundel "presumably has knowledge of the number of local university students he induced to use the mikvah."  Doe 2, Dkt. 39 at 5.  Even if Freundel "presumably" knows the number of students he lured, it does not follow that he knows the citizenship or even the residence of those students.  And even if he remembers where each of those students lived, for students there is no rebuttable presumption that residence equals citizenship.  *See, e.g.*, *Lancaster*, 2012 WL 524459, at *4 (finding residence insufficient to establish citizenship); *McMorris*, 493 F. Supp. 2d at 162–63 (same).

## CONCLUSION

For the foregoing reasons, Kesher respectfully requests that the Court deny both of the renewed motions for remand in their entirety and retain jurisdiction over this action pursuant to CAFA.

Respectfully submitted,

Dated: May 11, 2015

/s/ Paul Blankenstein
Paul Blankenstein, D.C. Bar No. 304931
Claudia M. Barrett, D.C. Bar No. 477594
Maura M. Logan, D.C. Bar No. 1010924
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  202.955.8500
Facsimile:  202.467.0539
pblankenstein@gibsondunn.com
cbarrett@gibsondunn.com
mlogan@gibsondunn.com

Attorneys for Defendant THE GEORGETOWN
SYNAGOGUE – KESHER ISRAEL
CONGREGATION


Dated: May 11, 2015

/s/ Evan T. Barr
Evan T. Barr (D.D.C. Bar No. 425971)
Samuel Groner (admitted *pro hac vice*)
Chelsea Azarak (admitted *pro hac vice*)
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: 212.859.8000
Facsimile: 212.859.4000
evan.barr@friedfrank.com
Samuel.Groner@friedfrank.com
Chelsea.Azrak@friedfrank.com

Attorneys for Defendant RABBINICAL COUNCIL
OF AMERICA, INC.

Dated: May 11, 2015                    _/s/ Edward C. Bacon_____
                                       Edward C. Bacon (D.C. Bar No. 270124)
                                       Patricia M. Thornton (D.C. Bar No. 354951)
                                       BACON, THORNTON & PALMER, LLP
                                       Capital Office Park
                                       6411 Ivy Lane, Suite 500
                                       Greenbelt, MD 20770-1411
                                       Telephone: 301.245.7001
                                       ebacon@lawbtp.com
                                       pthornton@lawbtp.com

                                       Attorneys for Defendant THE NATIONAL
                                       CAPITAL MIKVAH, INC.

## CERTIFICATE OF SERVICE

I, Claudia M. Barrett, hereby certify that on this 11th day of May, 2015, that I filed the foregoing Memorandum of Points and Authorities of All Defendants in Opposition to Plaintiffs' Most Recent Motions for Remand with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/Claudia M. Barrett
Claudia M. Barrett (D.C. Bar No. 477594)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
E-mail: cbarrett@gibsondunn.com